13466

STATE v. IRBY

(164 S. E., 912)

*Messrs. L. K. Jennings, E. W. Johnson* and *W. A. Crow,* for appellant,

*Mr. S. R. Watt, Solicitor,* for the State.

August 8, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On January 4, 1932, at a Court of General Sessions for Spartanburg County, the defendant, Irby, was arraigned on an indictment charging him with the murder of one Ralph Kitchens. At the time of the arraignment, the Court, being advised that he was without the benefit of counsel, appointed Messrs. Johnson, Jennings, and Crow, of the Spartanburg bar, to defend him. When the case was called for trial on January 8, a motion for a continuance was made on the ground that it would be impossible for counsel, appointed to defend after the true bill was found, to get a preliminary hearing for the defendant, which he was entitled to under the law, if the case should be tried at that term. This motion being overruled, counsel asked that the case go over until the following Monday on the ground that they had not had sufficient time to prepare for trial. The request was refused, and the trial proceeded. The defendant was convicted of murder, and sentenced to die by electrocution. He now appeals to this Court.

We shall first consider the contention that there was error in the refusal of the motion for a continuance.

Section 936 of the Code of 1932 provides that a defendant shall be given a preliminary hearing upon written

demand as therein provided, but that such demand shall be made at least ten days before the convening of the next General Sessions Court thereafter. The record before us discloses that the homicide occurred on November 30, 1930; defendant was soon thereafter arrested and charged with murder, but employed no counsel and made no effort to secure a preliminary hearing. It is not necessary that there shall be a preliminary hearing before a grand jury can indict a person charged with a crime. One may waive the right to such hearing by simply failing to ask for it, as was done in this case. The efforts of counsel to preserve to their client every legal right to which they thought him entitled are to be commended, but the fact that counsel were appointed after a true bill had been found by the grand jury would be no reason for a continuance of the case in order that the defendant might be given a preliminary hearing. Nor was there any error in the Court's refusal to carry the case over until the following Monday. It appears that the real reason for this request was that counsel desired to use as a witness a woman who lived at Woodruff, and who, although summoned by the sheriff, was not present when the case was called. When the Court was appraised of this situation, although ordering the case to immediate trial, he directed the sheriff to send for the witness at once in order that defendant might have the benefit of her testimony. Shortly thereafter she came into Court voluntarily, and testified for the appellant; the trial Judge granting counsel ample time for consultation with her before she was put on the stand. In the circumstances, we cannot see how the Court's action resulted in any harm to the defendant.

Appellant challenges the applicability of Section 908 of the 1932 Code, upon which the State relied as a justification of the arrest or attempted arrest of the defendant by the deceased, to the facts of this case, and in our view of the matter the decision must turn upon this point and the correctness of the Judge's charge in relation thereto. This sec-

tion reads as follows: "It shall be lawful for any citizen to arrest any person in the nighttime, by such efficient means as the darkness and the probability of his escape render necessary, even if his life should be thereby taken, in cases where he has committed a felony, or has entered a dwelling house with evil intent, or has broken or is breaking into an outhouse, with a view to plunder, or has in his possession stolen property, or, being under circumstances which raise just suspicion of his design to steal or to commit some felony, flees when he is hailed."

The pertinent facts, as we gather them from the record, may be briefly stated as follows: Some time after 12 o'clock on the night of November 30, 1930, the defendant, Irby, and two other negroes, Roy and Glover Sims, pursuant to a plan of the defendant, went to the home of one T. F. Charles, several miles from the city of Spartanburg, for the purpose of stealing chickens. When they arrived at the chicken house, which was about 150 yards from the dwelling, they broke in and stole chickens of the value of about $25.00. They then started back along the public highway towards Spartanburg, each carrying a sack of chickens. After having gone several miles, they saw two men, one C. W. Kitchens and his son Ralph, as it afterwards turned out, coming toward them. The witnesses are not in agreement as to what happened the moment the two parties discovered each other and thereafter. C. W. Kitchens testified that he was a special officer, holding a State Constable's commission and employed by the P. & N. Railroad, but that his duties were not entirely confined to that company. He further testified that on the night in question he had his son Ralph helping him, although Ralph had never been sworn in as an officer; that he saw the three men approaching, each with a sack, and that, as they turned and ran, he put his flash-light on them, they dropped the sacks, and he heard the chickens "holler"; that, while he did not know they had stolen the chickens, he thought they had; that he called to them to "halt," and that

he and Ralph, in order to stop them, fired their pistols into the bank on the side of the road, but that two of the men got away, the defendant, Irby, being overtaken by Ralph and thrown to the ground, about 100 yards from the place where the sacks were dropped; that when he arrived on the scene of the struggle he told the defendant that he was an officer and to consider himself under arrest, and then directed Ralph to let him up, the witness dropping his gun into the left pocket of his overcoat and taking his black-jack in his right hand; that the defendant then caught Ralph with his left hand and threw him to his knees and grabbed the witness with his right hand, whereupon the witness knocked him loose from Ralph with his black-jack and struck him over the head and told him to give up; but that about that time something happened and when he "came to" he found that his gun was gone and Ralph was lying on the ground calling for help; that Ralph was wounded by a pistol shot, from which he afterwards died; and that the witness himself was shot through the back of the neck and thereby rendered unconscious.

Roy Sims, who was with the defendants and participated in stealing the chickens, testified for the State to the following effect: That the three negroes named went to the chicken house of T. F. Charles on the night in question, and broke in and stole a lot of chickens; that on their way back to Spartanburg the witness, who was walking behind the others, saw two men meeting them; that he stopped and said to his companions, "Yonder comes two men"; that just then one of the men they were meeting turned his flash-light on them and they thereupon threw down their sacks and began to run in the opposite direction; that two or three shots were fired by the men behind them, the bullets passing close to the head of the witness; that in a few minutes he heard two shots, just as he was crossing Fairforest Creek, and a few minutes later four or five more shots; that he and his brother Glover escaped and went home, and that later

the defendant came and told him that he had been over-taken and caught by the young man and that the older one came up and began to beat him over the head unmercifully with his black-jack; and then he had slipped the gun from the older man's pocket, and shot the young man first and then the older one. Glover Sims testified to the same effect as his brother Roy.

The defendant testified that he and the two other negroes went out to the home of Mr. Charles and stole the chickens, and that on their way back to Spartanburg, they met two men, C. W. Kitchens and his son Ralph, on the highway; that he did not see the men at that time, but that they were seen by the other negroes who were with him, and that he ran when the others ran; that they were running with the sacks when the shots were fired, whereupon they dropped them; that about 100 yards from the place where they began to run he fell down and the younger man who was pursuing him came up and began to beat him over the head with a pistol; that thereafter the older man arrived and began to beat him also; that neither one said why he was beating him nor did the older man tell him that he was an officer or that defendant was under arrest, merely proceeding to hit him ten or twelve times over the head with his black-jack; that in the scuffle he got the pistol out of the coat pocket of the older man and shot one time toward him; that he shot only once and then fled; that he did not know or have any reason to believe that the two men were officers; that he was scared and did not know what to do; that they were beating him up with a black-jack, and that his sole purpose was to get away.

There are five instances specified in the statute above quoted in which a private citizen may lawfully arrest any person in the nighttime: (1) Where such person has committed a felony. (2) Where he has entered a dwelling house with evil intent. (3) Where he has broken or is breaking into an outhouse with a view to plunder. (4) Where he has

in his possession stolen property. (5) Where one, being under circumstances which raise just suspicion of his design to steal or to commit some felony, flees when he is hailed.

In the case at bar, the attempted arrest of the defendant by the two Kitchens took place upon a public highway some three miles from the chicken house which had been broken into and robbed by the defendant and his companions. It is not shown or claimed that either of the Kitchens had any knowledge whatsoever, at the time of the attempted arrest, that a felony had been committed or had any reasonable grounds for suspicion of such fact. C. W. Kitchens, the father, testified that he knew there were chickens in the bags that were thrown down, and that he "thought" they were stolen chickens, and apparently it was for this reason he ran after the men and attempted to make the arrest. It seems, therefore, under this testimony, that the attempted arrest could be justified under this section of the Code only, if at all, on the ground that Irby had in his possession stolen property.

And the main trouble, as we see it, was the failure on the part of the trial Judge to fully charge the law applicable in this connection. He read to the jury twice, and stated to them, in substance, at least once, the statute upon which the State relied for justification of the attempted arrest of the defendant by the deceased, and charged in connection therewith that, if one "falls under this section," the citizen has a right, in the circumstances set forth in the statute, to make an arrest and to use such force as might be necessary even to the extent of taking life. But he did not tell the jury, as he should have done, that, before a citizen would be justified in attempting to arrest one whom he suspected of having in his possession stolen property, he must have reasonable ground for such suspicion—mere suspicion is insufficient—and that it was for them to say under the evidence whether the circumstances in this case constituted reasonable grounds for such suspicion on the part of the

deceased. This was a material question, and the failure of the trial Judge to submit it to the jury, under proper instructions, was prejudicial error.

We advert here to the point made in appellant's argument, that he was tried for the killing of Ralph Kitchens and not for assault and battery with intent to kill C. W. Kitchens, and that no suspicion the elder Kitchens may have had, that the chickens were stolen, could be delegated to his son, and there is no evidence that there was any such suspicion on the son's part. We think, however, that, in any view of the testimony as to what happened when the two parties met on the highway, a question was made for the jury as to whether the deceased suspected that defendant had in his possession at the time stolen property, and, if so, whether there was reasonable ground for such suspicion.

It is unnecessary to consider the other questions raised by the appeal.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

Mr. Chief Justice Blease and Mr. Acting Associate Justice Cothran concur.

Mr. Justice Bonham concurs in result.

Mr. Justice Carter (dissenting) :

The facts in this case are clearly stated in the leading opinion, and a statement of the same herein is therefore unnecessary. I am in full accord with the views expressed in the leading opinion, except as to the position that the trial Judge committed prejudicial error in his charge to the jury, in failing to *fully* charge the law applicable in connection with the right of the deceased to arrest or attempt to arrest the defendant at the time the deceased was killed by the defendant. I am unable to agree with this position. The section of the Code (Section 908) involved and under which the State contends the deceased had the right to arrest the defendant, reads as follows: "It shall be lawful for any

citizen to arrest any person in the nighttime, by such effi-
cient means as the darkness and the probability of his escape
render necessary, even if his life should be thereby taken, in
cases where he has committed a felony, or has entered a
dwelling house with evil intent, or has broken or is break-
ing into an outhouse, with a view to plunder, or has in his
possession stolen property, or, being under circumstances
which raise just suspicion of his design to steal or to commit
some felony, flees when he is hailed."

As clearly appears, under this provision of the Code,
there are five instances named in which a private citizen may
lawfully arrest any person in the nighttime, but, as stated
in the leading opinion, it is only the fourth ground named
that could apply to the case at bar, namely, where such per-
son *"has in his possession stolen property."* (Italics added.)
It is contended in the leading opinion that the trial Judge
did not fully charge the law in this connection; the con-
tention being that, although his Honor "read to the jury
twice, and stated to them in substance at least once, the
statute upon which the State relied for justification of the
attempted arrest of the defendant by the deceased," his
Honor committed prejudicial error because his Honor did
not tell the jury "that, before a citizen would be justified in
attempting to arrest one whom he suspected of having in
his possession stolen property, he must have reasonable
ground for such suspicion.   *   *   *" In the first place we
call attention to the fact that there was no request for a
fuller charge in respect to this question, although ample op-
portunity was given for request for a fuller charge, if de-
sired, the trial Judge at the conclusion of his charge having
asked counsel if there was anything further, to which
counsel answered there was not. Therefore, under the well-
recognized rule, appellant cannot now complain; it clearly
appearing, as stated above, that his Honor read to the jury
twice and stated to them, in substance, at least once, the
statute under consideration. Furthermore, I do not think it

was the duty of the trial Judge, in charging the provisions of the Code under consideration, to add thereto an additional condition. The fourth instance stated in the section of the Code under consideration in which any citizen may arrest any person is for the person to have "in his possession stolen property." Neither the word "suspicion" nor any other word of similar meaning is used in connection with the fourth ground named in which an arrest can be made. The only requisite named is that the person must have "in his possession stolen property"; and in this connection, let me add, the defendant admitted having in his possession stolen property at the time in question. Now, the fifth instance named in this section of the Code under which an arrest may be made contains language to that effect, namely, "or, being under circumstances which raise *just suspicion* of his design to steal or to commit some felony, flees when he is hailed." But this wording is used only in connection with the fifth instance, referred to in the statute, and has no reference to instance or condition No. 4 which we are considering. But, if it be contended that the additional wording, to which reference is made, must be read into the statute, in order to make the statute reasonable and workable, I call attention to the fact that no such contention was made in the lower Court, and, so far as the record discloses, no request to charge on that ground was presented to the trial Judge or in any way suggested to him. Further, according to my view of the record in the case, the only reasonable inference to be drawn from the testimony is that the deceased had reasonable ground for suspecting that the defendant had stolen goods in his possession at the time in question. In connection with all that has been said, it must be remembered that the defendant admitted on the trial of the case that he, with two other negroes, stole the property in question, consisting of a number of chickens, and that, when the deceased saw him, he had on his shoulders, in a

bag, part of the said chickens, which he threw on the ground when the flash-light was turned on him.

As I view the case, the trial Judge did not commit prejudicial error. In fact, I do not think his Honor committed error at all, and, in my opinion, the defendant, having had a fair trial, the judgment of the lower Court should be affirmed.