Ernest Leroy SANDERS, Petitioner,

v.

The STATE OF SOUTH CAROLINA; Mr. Daniel R. McLeod, South Carolina Attorney General, Columbia, South Carolina; Mr. W. D. Leeke, Director, South Carolina Department of Corrections, Columbia, South Carolina; Mr. John H. Hydrick, Jr., Attorney at Law, Lexington, South Carolina; Mr. William F. Rogers, Attorney at Law, Lexington, South Carolina; Mr. Hubert E. Long, Solicitor, Eleventh Judicial Circuit Court, Lexington, South Carolina; et al., Respondents.

Civ. A. No. 68–877.

United States District Court
D. South Carolina,
Columbia Division.

Jan. 23, 1969.

J. Lewis Cromer, Columbia, S. C., for plaintiff.

Daniel R. McLeod, Atty. Gen., of S. C., Columbia, S. C., by Emmett H. Clair, Asst. Atty. Gen., Columbia, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This matter is before the court on the last of a long series of petitions of Ernest Leroy Sanders for a writ of habeas corpus. He is presently confined to the Central Correctional Institution of the South Carolina Department of Corrections, pursuant to orders of commitment of the Clerk of Court of General Sessions for Lexington County, South Carolina.

Petitioner, who was indicted for and found guilty of the crime of forgery, was represented at his trial on September 6–7, 1967 by his court appointed counsel, John H. Hydrick, Jr., and William F. Rogers, both of the Lexington County Bar. Subsequent to his conviction he was sentenced to a period of confinement for seven years (the maximum confinement for forgery under the South Carolina Statute) and to pay a fine of $5,000 [1] by Honorable John Grimball, Presiding Judge of the Lexington County Court of General Sessions.

A review of the file will readily substantiate that petitioner is no stranger to this court or to the state courts of South Carolina in connection with his arrest, detention, trial and sentence for the crime of forgery with which we are concerned in this proceeding. He has filed numerous petitions for habeas corpus and for restraining order in the state courts, both Circuit and Supreme, and the United States District Court, even before he was actually tried, convicted and sentenced in the Lexington County General Sessions Court. His previous petitions in this court were dismissed for failure to exhaust his state court remedies pursuant to the provisions of 28 U.S.C.A. § 2254.[2]

In its opinion filed September 5, 1968 the South Carolina Supreme Court affirmed petitioner's conviction for forgery in State v. Sanders, S. C., 163 S.E.2d 220.

█ Although petitioner has filed no state court habeas petitions since the State Supreme Court's affirmance of his conviction he and respondents have admitted that in his current petition to this court he raised substantially the identical questions presented to and ruled upon by the South Carolina Supreme Court in State v. Sanders, *supra*. Therefore, in considering petitioner's petition herein and respondents' return thereto the court concluded that he had sufficiently exhausted his state remedies in accordance with Section 2254, *supra*, to require this court to consider his petition on the merits. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960); United States ex rel. Frinks v. Barwick, 331 F.2d 597 (4th Cir. 1964); Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964); Hayes v. Boslow, 336 F.2d 31 (4th Cir. 1964).

In his twenty-six page current petition petitioner alleges a violation of his rights under the Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments

1. 16 S.C.Code 351 (1962).

2. Order of Judge J. Robert Martin, Jr., filed August 7, 1967 in the case of Ernest Leroy Sanders v. Hubert Long, et al.; order of this court filed February 20, 1968 in Civil Action 68–1 entitled Ernest Leroy Sanders v. State of South Carolina et al., which was affirmed by memorandum decision of the Fourth Circuit Court of Appeals, No. 12,280, filed May 9, 1968. It is noted that at the time of this last proceeding petitioner's appeal from his conviction for forgery in Lexington County was still pending in and being processed before the South Carolina Supreme Court.

of the United States Constitution on the following grounds:

"1. That he was denied the assistance of counsel.

2. That he was denied a Fair and Impartial Trial.

3. That he was denied the right to obtain certain witnesses in his behalf.

4. The petitioner was denied the right to an Impartial Jury.

5. The Petitioner was denied the right to a Speedy and Public Trial.

6. Excessive Fine and Excessive Sentence has been imposed upon the Petitioner.

7. Cruel and Unusual Punishment has been inflicted upon the Petitioner.

8. The Petitioner has been held in involuntary Servitude.

9. Due Process and Equal Protection of the laws has been denied to the Petitioner.

10. The Grand Jury that returned the indictment against the Petitioner, was not a Proper [sic] Constituted Grand Jury.

11. The Trial Court was without Jurisdiction.

12. Court appointed attorneys representing the Petitioner were Inadequate, inefective [sic] and Incompetent."

After a careful review of petitioner's petition, respondents' return, the transcript of the trial proceedings in the Lexington County General Sessions Court, and the transcript of the record before the South Carolina Supreme Court in State v. Sanders, *supra*, this court concluded that petitioner was entitled to an evidentiary hearing to present such evidence and witnesses as he so desired in support of all of his contentions, especially in view of the fact that no evidentiary hearing in the state court had been held in a habeas or other proceeding wherein petitioner had been given the opportunity to present testimony and evidence in support of his twelve contentions listed above. The court appointed J. Lewis Cromer, Esquire, of the Richland County Bar to represent petitioner in the proceeding in this court.

A full evidentiary hearing was held in Columbia, South Carolina on the 21st day of November, and December 12, 1968. Prior to the hearing the court granted petitioner's request for orders subpoenaing all witnesses that he and his counsel desired to subpoena and required their presence at government's expense. After one full day's proceedings the hearing was adjourned at the request of petitioner and his counsel in order that additional witnesses might be located and presented. The court received all testimony and evidence which petitioner desired to present in connection with all twelve of his contentions listed above, although a study of the record, including the trial and appeal transcripts and the South Carolina Supreme Court opinion in State v. Sanders, *supra*, reveals that most of petitioner's allegations had been fully explored, considered and correctly disposed of in the state court. Nevertheless, no limitations as to the testimony or evidence which petitioner desired to present was imposed and petitioner was also given leave to, and was in fact specifically requested to raise any other issues or claimed violations of his constitutional rights not asserted in his petition. No additional grounds for relief were claimed by petitioner or his counsel. During the hearing petitioner at his request was permitted to examine personally all witnesses and to make any points for the record he cared to, in addition to the questioning by his court appointed counsel.

Upon a careful review of the record, it has been concluded that the South Carolina Supreme Court in its opinion, *supra*, fully and properly disposed of petitioner's contentions with the exception of petitioner's grounds I, III and XII, *supra*. Nevertheless, all twelve of his contentions will be considered and discussed hereinafter.

For a better understanding of the court's discussion and determination of the issues presented by petitioner a finding of the relevant facts are set forth as follows:

1. Petitioner was arrested on November 4, 1966 at Florence, South Carolina, by federal authorities in connection with a federal crime involving forgery. He was carried before a commissioner at Florence and counsel was appointed for him. On November 5, 1966 he was turned over to the Lexington County authorities on a state forgery charge. Shortly thereafter he became violent and on November 6, 1966 was placed in the South Carolina State Hospital for examination and treatment for acute alcoholism and malnutrition. He remained in the State Hospital for approximately four months, or until early March 1967. While there on one or more occasions he was interviewed by Clifford Moyer, an FBI agent in connection with certain federal offenses. He apparently advised Moyer during this period that he would like to have counsel. He also wrote Solicitor Hubert Long of the Eleventh Judicial Circuit, which includes Lexington County, asking for the assistance of a lawyer. Long advised him by letter that counsel would be appointed for him by the court prior to his trial.

2. He was released from the State Hospital in early March, 1967 to the state authorities and returned to the Lexington County Jail. While there awaiting trial he claims that on several occasions he told Sheriff Boatwright and other of his deputies and jailers that he desired counsel and that he wanted a preliminary hearing. All of the officers subpoenaed by petitioner stated that they did not have any recollection of these requests by petitioner, but did not deny that such requests were made.

3. On May 19, 1967, John H. Hydrick, Jr., Esquire, of the Lexington Bar was appointed by the Presiding Judge to represent petitioner. This was on Thursday afternoon before court convened the following Monday when petitioner's case was going to be submitted to the grand jury. On Monday following Hydrick's appointment on Thursday, May 19th, the all male Lexington County Grand Jury which had been duly and legally selected in December 1967 for the entire year 1968 considered the indictment against petitioner for forgery and returned a true bill, which was read in open court in the presence of the foreman and all members of the grand jury, as is the established custom in South Carolina.

4. Petitioner was arraigned on May 25th and his case was called for trial on May 26th. In the meantime Hydrick had asked the Solicitor and Magistrate Forte Taylor for a preliminary hearing which was not held at that time because the grand jury had already returned a true bill. In his conferences with counsel petitioner furnished a list of twenty-five or thirty potential witnesses that he wanted present for the trial.

5. Upon petitioner's personal motion his case was continued beyond the May 1967 term. His stated reason for requesting the continuance was that his counsel had not had adequate time to prepare for trial. However, he and his counsel testified at the habeas hearing before this court that one of the main reasons for asking for the continuance was that petitioner hoped that by getting a delay he would be taken over by the federal authorities.[3]

6. One Dean Biddicks and Ruby Mullis who later became petitioner's wife were both involved in the federal offense with petitioner, but there was no indication that they were involved with petitioner in the state court offense with which this court is concerned here.

7. Petitioner was indicted, tried and convicted for forging during April 1966

___

3. It is noted that at that time petitioner was approximately 49 years of age and had spent about 26 years in state or federal custody, some of the sentences having been imposed for forgery. He stated that he preferred to be in federal custody rather than state custody.

the name of Manning Harris, his former employer, to a $56 check. Manning Harris, according to his own testimony, had given several worthless checks to other persons.

8. In addition to Ruby Mullis (Sanders) and Dean Biddicks, the names of other potential witnesses given by petitioner to his attorney Hydrick were those of Walter McNair, one Fraser, Sharpe and Angelo, also former employees of Manning Harris and fellow workers of petitioner, whom petitioner claimed could have testified that Manning Harris had given other worthless checks. Petitioner also requested his counsel to have a psychiatrist at the South Carolina State Hospital present to testify at his trial, although there is no credibile evidence as to what his testimony would have been. Petitioner also requested his counsel to secure certain psychiatric records from Atlanta, Georgia, which was not done. There is no showing as to what such records would have proved. Hydrick did obtain a court order and inspected the South Carolina State Hospital records as to petitioner's confinement there from November 1966 to March 1967, and concluded that nothing favorable to petitioner could be gained from these records. His attorney also determined that the testimony of a psychiatrist would be of no assistance, as well as the testimony of Walter McNair, Angelo, et al., who would only testify as to worthless checks given by Manning Harris.

9. Prior to his trial in September 1967 petitioner was given a preliminary hearing before Magistrate Forte Taylor of Lexington County, even though an indictment had already been returned against him by the grand jury. He was represented by Mr. Hydrick at this preliminary hearing, and was given the opportunity to question the state's witnesses.

10. From the time of his appointment on May 19, 1967 until petitioner's trial on September 6 and 7, Mr. Hydrick, his attorney, conferred with him several times at the jail, and interviewed numerous witnesses whose names had been given to him by petitioner. He also talked with Sanders' mother and brother Lonnie.

11. As the result of a complaint to the state court by petitioner of Hydrick's representation of him, William F. Rogers, Esquire, also of the Lexington Bar was appointed on September 1, 1967 to assist Hydrick in petitioner's defense.

12. Although petitioner's counsel at his request made a perfunctory motion for a continuance of petitioner's case before the September 1967 term of General Sessions Court on the basis that they were not prepared, that they had not had sufficient funds to properly investigate the circumstances, and that they needed their own handwriting expert, both counsel testified that they were in fact ready for trial at that time. The trial transcript and the testimony of his counsel substantiate that petitioner actively participated with his counsel in his defense making numerous suggestions and recommendations to them. He requested his counsel to obtain a sequestration of the witnesses which was not done. The prospective jurors were not placed on their voir dire, and all ten peremptory challenges were used on petitioner's behalf. His counsel, each of whom had practiced law in Lexington County, South Carolina for several years, had a substantial amount of information either from personal knowledge or from their investigations about members of the jury panel, and they accordingly exercised their best informed judgment in selecting petitioner's trial jury. Although several witnesses were presented by petitioner in an attempt to show bias or prejudice of the petit or grand jury, there was absolutely no showing of any relationship, bias or prejudice of any members of such juries.

13. John H. Hydrick, Jr., chief counsel appointed for petitioner, was admitted to the Bar by the South Carolina Supreme Court in 1947. At the time of petitioner's trial he had been actively engaged in the trial of civil and criminal cases in state and federal courts for

several years. He has appeared before this court and represented clients in an admirable manner. He testified that he had never worked harder on any case than that of petitioner, that he did everything within reason to give petitioner the best representation of his ability. During the trial of the case petitioner actually commended his counsel for the manner in which they were handling his case.

14. William F. Rogers, Jr., who also represented petitioner at his trial, is an associate of Lever and Duncan, a very prominent firm of Lexington, South Carolina, and had had four years experience at that time.

15. Petitioner had married Ruby Mullis prior to his arrest. During early November 1966 she came to stay with petitioner's mother and became seriously ill with pneumonia. She was also suffering from extreme malnutrition. She was carried to the Columbia Hospital on November 6, 1966 where she remained in critical condition for several days before she passed away on November 9, 1966, five days after petitioner's arrest. At the time of petitioner's arrest Dean Biddicks whom petitioner claims was a material witness was in the county jail at York, South Carolina. He was thereafter upon his conviction transferred to the South Carolina Penitentiary, and was apparently incarcerated there at the time of petitioner's trial, although there is no showing that petitioner knew his whereabouts at that time.

16. During the trial Solicitor Long in a summation to the jury made certain remarks which were objected to by petitioner and his counsel. The Presiding Judge overruled the objection and the South Carolina Supreme Court held that such argument was not prejudicial when taken in context with the remainder of his remarks.

17. Upon his conviction petitioner was sentenced to the maximum provided by the South Carolina Statute for forgery, that is seven years in prison, and he was given a discretionary fine of $5,000. Petitioner also had been in custody approximately ten months prior to his trial for which he was given no credit. South Carolina has no statutory provision providing for the giving of credit for pretrial custody.

18. No purported confessions, admissions or other extrajudicial statements made by petitioner between the time of his arrest and the time of his trial were used, or attempted to be used, against him in the trial of his case.

19. Page two of the Solicitor's argument to the jury was missing from the copy of the transcript of petitioner's trial which was furnished by the state to him. However, upon request of his counsel this page properly certified was duly furnished by the Clerk of Court and it contained no prejudicial or inflammatory argument as contended by petitioner.

DISCUSSION AND CONCLUSIONS AS TO PETITIONER'S ALLEGATIONS:
(I) "THAT HE WAS DENIED THE ASSISTANCE OF COUNSEL" and (III) "THAT HE WAS DENIED THE RIGHT TO OBTAIN CERTAIN WITNESSES IN HIS BEHALF."

The court has consolidated petitioner's contentions 1 and 3 for its discussion because they are inherently connected one with the other and from a practical standpoint should be discussed and considered together.

Petitioner contends that since he was arrested on November 4, 1966 and that counsel was not appointed for him until May 19, 1967, some six months later, he was denied his sixth amendment right to proper assistance of counsel which resulted in his being denied the right to obtain certain witnesses in his behalf, resulting in substantial prejudice to him upon the trial of his case. In our system of jurisprudence as enunciated by the United States Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.

1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), any defendant who has been taken into custody as a prime suspect, or who has been charged with a crime, or who is brought to trial, is entitled to an attorney to represent him at all crucial and critical stages of the proceedings against him; and a denial thereof consitutes an abridgment of the Sixth Amendment rights of an accused. If such a denial results in any material or substantial prejudice to the cause of an accused he is entitled to relief therefrom.

■■■ Most of the recorded cases brought to the court's attention involving the denial of effective assistance of counsel are those in which counsel were appointed a very short period of time before defendant's case was called for trial, so that the attorney and client did not have sufficient time to confer nor did the attorney have adequate time to investigate the facts and circumstances surrounding the charges against his client. Such was the factual situation in Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), Martin v. Commonwealth of Virginia, 365 F.2d 549 (4th Cir. 1966), Turner v. State of Maryland, 318 F.2d 852 (4th Cir. 1963), Edgerton v. State of North Carolina, 315 F.2d 676 (4th Cir. 1963), United States ex rel. Williams v. Brierley, 291 F.Supp. 912, U.S.D.C., E.Pa. 4 Oct. 1968, and numerous other cases from this and other circuits which hold that the practice of appointing counsel in a felony case so close to trial that the lawyer is not afforded a reasonable opportunity to investigate and prepare his case is inherently prejudicial, and a mere showing of a late time of appointment constitutes a prima facie case of denial of effective assistance of counsel; and the burden of proving lack of prejudice is thereby shifted to the State.

■■ We have an entirely different factual situation in this case since counsel was appointed for petitioner on May 19, 1967, approximately one week before his case was called for trial the first time. Upon petitioner's motion the case was continued until the next term, and was not called for trial until September 6, 1967. Thus, John H. Hydrick, Jr., was appointed for petitioner almost four months before his case was tried and had adequate time to confer, investigate and prepare for trial. Petitioner's other court appointed counsel was also appointed to represent him on September 1st, 1967, almost a week before his case was tried. The record rebuts any reasonable inference that petitioner's counsel did not have adequate time to prepare for trial.

■■■ The main thrust of petitioner's argument in this connection is that he was denied the effective assistance of counsel because of the six months delay from the time of his arrest on November 4, 1966 to the appointment of his counsel on May 19, 1967. For four months during this period of time petitioner was confined to the South Carolina State Hospital undergoing treatment for extreme alcoholism, amnesia and malnutrition. He was in no condition to stand trial and apparently in no condition to consult with an attorney. After he was released from the State Hospital counsel was appointed for him prior to the next ensuing term of criminal court which convened Monday, May 23, 1966. During this six-month period while he was in custody without counsel there is no evidence that any confession, admissions against interest, or other extra-judicial statements were made by petitioner which were used or attempted to be used against him in his trial in violation of the teachings of Escobedo v. Illinois, *supra*, and Miranda v. Arizona, *supra*. Thus, there is no basis for a claim that petitioner suffered any substantial prejudice as a result of the unusually long and unexplained delay in appointing counsel for him. If he were denied his constitutional rights in this connection, such constituted harmless error.

■■ Of considerably more concern is petitioner's contention that the late appointment of counsel denied him the right to have several material witnesses present at his trial because they were available to him shortly after his arrest, but their whereabouts were unknown to

him at the time of his trial. The witnesses whom he complains about are Ruby Mullis (Sanders), Dean Biddicks, Walter McNair and one Angelo, and possibly others.

After the commission of the offense of forgery about April 1966 petitioner was married to Ruby Mullis. When he was arrested on November 4, 1966 and brought to the Lexington County jail she came to Lexington County to stay with his mother, Mrs. Ruth Sanders. Shortly thereafter she became critically ill with pneumonia and malnutrition, and on November 6, 1966 was carried to the Columbia Hospital where she remained in a most critical condition until her death on November 9, 1966. At this same time petitioner was also confined at the State Hospital in an irrational state. Thus the delay in appointing counsel in no way prejudiced petitioner insofar as any information or testimony which Ruby Mullis Sanders could have furnished.

Petitioner also strongly urges that Dean Biddicks would have been a most material witness for his defense; that Biddicks was confined to the York County Jail when he was first arrested, but that by the time counsel was appointed for him he had lost contact with him and did not know of his whereabouts. The record reflects that both Ruth Mullis and Dean Biddicks were involved in a federal forgery offense with petitioner, but that neither had any connection with the state court offense for which petitioner was tried. There is no showing from the evidence or the record that either Dean Biddicks or Ruth Mullis were present with petitioner during the period when he was alleged to have committed the act of forgery. Neither did petitioner present any definite evidence as to what testimony Biddicks could have given to assist him in his defense other than to say that Sanders was an excellent forger. Petitioner's contention that Biddicks was a material witness is entirely speculative, and it is significant that no motion for continuance was made by petitioner at the September Term of Court on the

ground that Biddicks, or any other witness, was not available for the trial.

The other two witnesses whose absence from the trial is claimed by petitioner to have prejudiced his defense were Walter McNair and one Angelo, who were co-workers of petitioner while he was employed by Manning Harris. Petitioner testified that these co-workers of his and possibly others if they had been in court for the trial would have testified that his employer, Manning Harris, had given them and other people worthless checks, thereby substantiating his defense that the check which he is alleged to have forged was merely a worthless check which Manning Harris had given him. A review of the trial transcript reveals that Manning Harris himself testified that he had on occasions given worthless checks to other people. Mr. Hydrick himself testified before this court that he consulted numerous other witnesses whose names had been given to him by petitioner concerning Manning Harris giving worthless checks, and that he made a considered judgment that such witnesses would be of no benefit to petitioner, and did not subpoena them to appear at the trial. He further expressed the opinion that the failure to have any of these witnesses in court was in no way prejudicial to the petitioner, whose defense was that he had not signed Manning Harris' name to the check. Hydrick also testified that in his professional opinion the delay in his appointment as counsel for petitioner resulted in no prejudice whatsoever.

 This court surely does not condone or approve of the practice of delaying for such a long time the appointing of counsel for an accused, especially where he has made several attempts to obtain counsel. Nevertheless, no citation of authority has been called to the court's attention, nor found by independent research, which specifies that counsel shall be appointed within a certain limited period of time. Surely the better practice is to appoint counsel when requested and without delay. As the Fourth Cir-

cuit Court of Appeals in Twiford v. Peyton, 372 F.2d 670, at 673 (1967) stated:

"It suffices to say that an unnecessary and unexplained delay between incarceration and the appointment of counsel gives rise to a substantial possibility of prejudice to an accused because defense witnesses may be dispersed or, if not dispersed, their recollections may fade."

Under the circumstances it is concluded that petitioner was not deprived of representation by counsel at any critical stage of the proceedings against him, nor that his conviction was accomplished or affected in any way by evidence, confession or otherwise obtained as a result of his detention. Neither did the failure to appoint counsel at an earlier time adversely affect his obtaining evidence and witnesses in his behalf, nor was there any denial of his constitutional rights in this connection. Any error thereabouts did not result in any meaningful or substantial prejudice to him, and at most could only be considered as harmless error, coming within the ambit of the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) wherein the court stated: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

## II. "THAT HE WAS DENIED A FAIR AND IMPARTIAL TRIAL."

■ In support of his second allegation, petitioner asserts that the presence of an FBI agent, a U. S. Deputy Marshal, and an FBI handwriting expert in court during his trial prejudiced his case since this was a state prosecution, and "there was no cause to bring in the F. B. I." that a "carnival atmosphere" was thereby created. Special Agent Moyer was only in the courtroom as a spectator. The FBI handwriting expert was the only federal agent or employee who testified, and this was necessary because the State Law Enforcement Division of the South Carolina Law Enforcement Agency had no expert in handwriting.

Petitioner further alleged that an FBI tag attached to a forged check likewise prejudiced the jury, and that the solicitor's arguments to the jury were prejudicial. Each of these allegations are without merit. His signature on the FBI fingerprint card was carefully separated from the card itself. Petitioner contends the Solicitor should have used a specimen of his signature from a source other than the FBI card. Petitioner of course has no right to dictate to the Solicitor what exhibits will be used.

Petitioner asserted that page two of the Solicitor's argument to the jury which allegedly reported highly inflammatory remarks was omitted from his copy of the trial transcript, and was never furnished him. Apparently through inadvertence a copy of page two was left out of the transcript which the state furnished to petitioner. His counsel, however, was given a copy of same upon their request. In all other copies page two was intact and nothing prejudicial to petitioner appeared thereon.

■ Petitioner's contentions that the Solicitor's argument to the petit jury was prejudicial, inflammatory, and deprived him of a "fair and impartial" trial are without merit, as will be shown from a reading of his entire argument fully reported in the trial transcript.

His contention that the trial judge who tried his case was prejudiced is totally without merit or substantiation.

## IV. "THE PETITIONER WAS DENIED THE RIGHT TO AN IMPARTIAL JURY."

■ The testimony before this court showed such contention to be utterly without merit. Petitioner called as witnesses individuals who had served on the grand and petit jury by the name of Long, Leaphart, and Taylor. He questioned them as to whether they were related to Solicitor Hubert E. Long, or to Sharon K. Leaphart, Sheriff Boatwright's Secretary, or Magistrate Forte Taylor who issued the warrant against him.

None of these witnesses were related in any degree known to them to any of the persons charged by petitioner.

Petitioner also complains that the jury was not challenged "for cause", nor placed on their voir dire. Nothing has been presented to show that any should have been challenged for cause. He also complains that ten peremptory challenges were used for no good reason and without his counsel consulting him. Such charges are either without foundation, or resulted in no prejudice to him.

## V. "THE PETITIONER WAS DENIED THE RIGHT TO A SPEEDY AND PUBLIC TRIAL."

 This allegation is without merit. Petitioner himself testified that one of the primary reasons he desired his case continued beyond the May 1967 term was his desire and hope that the federal authorities would retake custody of him if the State delayed trial. He preferred that a disposition of any charges against him be in federal rather than the state court, as he liked the treatment of federal authorities better than that of the state authorities. Aside from the delay occasioned by his requested continuance he was in no condition to stand trial during his four months' hospitalization in the South Carolina State Hospital.

## VI. "EXCESSIVE FINE AND EXCESSIVE SENTENCE HAVE BEEN IMPOSED ON PETITIONER" and VII "CRUEL AND UNUSUAL PUNISHMENT HAVE BEEN INFLICTED UPON PETITIONER."

 Petitioner was given the maximum sentence authorized by South Carolina Law for forgery, which is seven years, together with a discretionary fine of $5,000. Section 16–351, 1962 S.C. Code of Laws. Such sentence was lawful and within the statutory limits. Although it may be felt that such a sentence was too severe, and that petitioner should have been given credit for his pretrial custody, it is not within the province of this court to reduce sentences. The length of a sentence is within the sound discretion of the trial judge, so long as it is within the maximum range provided by the statute. United States v. Chunn, 347 F.2d 717 (4th Cir. 1965). The rule is well established in this State and Circuit, as well as elsewhere that a sentence will not be held to be excessive or illegal if it is within the statutory maximum for such offense. The trial judge was aware of the long and serious past record of petitioner which apparently involved convictions for other forgery offenses.

Petitioner cites Dunn v. United States, 376 F.2d 191 (4th Cir. 1967), alleging that he is entitled to credit for time spent in presentence custody.

In *Dunn, supra,* the court found that defendant was entitled to time spent in presentence custody. A similar result was reached in Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326 (1966), but both these cases involved the federal statute[4] requiring that a defendant be given credit for time spent in presentence custody.

South Carolina has no statute requiring that credit shall be given for presentence custody, as do some states and the United States.

In petitioner's own case of State v. Sanders, *supra,* the South Carolina Supreme Court held that in the absence of statute there is no requirement under South Carolina law that credit be given for presentence custody as a matter of right.

 Under the circumstances, it is concluded that petitioner was not entitled as a matter of right to credit for presentence custody, nor can it be held as a matter of law that excessive, cruel or unusual punishment has been imposed upon him.

4. 18 U.S.C.A. § 3568.

VIII. "THE PETITIONER HAS BEEN HELD IN INVOLUNTARY SERVITUDE."

In support of this contention petitioner cited Title VII, Section 6 of the South Carolina Code which reads: "In criminal cases service of notice of appeal in accordance with law shall operate as a stay of the execution of the sentence until the appeal is finally disposed of." Such section must also be read in conjunction with Title VII, Section 7, of the South Carolina Code which reads as follows: "Pending such appeal the defendant shall still remain in confinement until he give bail in such sum and with such sureties as to the court shall seem proper."

Petitioner was unable to raise the bond which was set when his notice of appeal was given, and was therefore not entitled to be released from custody pending his appeal.

IX. "DUE PROCESS AND EQUAL PROTECTION OF THE LAWS HAS BEEN DENIED TO PETITIONER" and XI "THE TRIAL COURT WAS WITHOUT JURISDICTION."

In support of these contentions petitioner asserted, among various other grounds, that the warrant issued against him was invalid in that it was not properly executed, and that certain words used in the indictment against him were prejudicial, unfair, irrelevant and immaterial. Such contentions are without merit. Nothing was established by the evidence presented by petitioner which would make the warrant invalid. The confusion over the warrant which petitioner relies upon is explained by the fact that there were originally two warrants in two separate cases. One was the warrant giving rise to the charges in this case, and the other termed the "Sease Warrant" involved another separate and distinct offense for which petitioner has apparently never been tried. W. Manning Harris verified his signature on the warrant even though he didn't specifically remember having signed it. Admittedly there is some confusion created by the apparently contradictory testimony of Harris and G. W. Johnson to whom petitioner negotiated the forged check for $56 about their signing of the warrant, and their relationship with each other.

Petitioner's contention that unnecessary, improper and prejudicial words were used in the indictment is adequately disposed of by the opinion of the South Carolina Supreme Court in State v. Sanders, *supra*, as follows:

"While the indiscriminate use of obsolete and inappropriate allegations in indictments is not approved, we find no prejudice to defendant in this case from the allegations that the offense was committed 'with force and arms.' The jury was properly instructed as to the elements of the offense charged and there is nothing to indicate that such allegations in any way affected the verdict."

Likewise his complaint of the use of the word "counterfeit" in the indictment is without merit and adequately disposed of in the state court's opinion.

Petitioner places much emphasis on the fact that he was not granted a preliminary hearing until after the indictment had been returned against him; (Section 43–232 of the 1962 S.C.Code of Laws) and that he was thereby denied due process and equal protection of the law, that the indictment against him was thereby invalid, and the trial court was without jurisdiction.

Such contentions are adequately and fully disposed of by the South Carolina Supreme Court in State v. Sanders, *supra*, as follows:

"It is also contended that the indictment was rendered prior to a preliminary hearing and that the court was therefore without jurisdiction of the cause. Defendant apparently relies in this connection upon Section 43–232 of the 1962 Code of Laws. This section provides that 'any magistrate who issues a warrant charging a crime beyond his jurisdiction shall grant and hold a preliminary investigation of it

upon the demand in writing of the defendant made at least ten days before the convening of the next court of general sessions * * * as to whether a probable case has been made out and as to whether the case ought to be dismissed by the magistrate and the defendant discharged without delay.' And, 'when such a hearing has been so demanded the case shall not be transmitted to the court of general sessions or submitted to the grand jury until the preliminary hearing shall have been had, the magistrate to retain jurisdiction and the court of general sessions not to acquire jurisdiction until after such preliminary hearing.'

"The provisions of Section 43–232 which preclude the acquisition of jurisdiction by the court of general sessions until after a preliminary hearing is held is conditioned upon the demand for such hearing in writing at least ten days before the convening of the next court. It is only where timely demand has been made for a preliminary hearing that acquisition of jurisdiction by the court of general sessions is delayed. As stated in State v. Irby, 166 S.C. 430, 164 S.E. 912, 913: 'It is not necessary that there shall be a preliminary hearing before a grand jury can indict a person charged with a crime. One may waive the right to such hearing by simply failing to ask for it, as was done in this case.'

"The fact that defendant was not represented by counsel in time to request a preliminary hearing 'at least ten days before the convening of the next court,' so as to prevent the court of general sessions from obtaining jurisdiction as provided in Section 43–232, in no way prejudiced defendant.

"*A preliminary hearing in South Carolina is not a critical stage of criminal proceedings against a defendant.* State v. White, 243 S.C. 238, 133 S.E. 2d 320.

"If a defendant is discharged by a magistrate at a preliminary hearing, such is not a final determination of the charge and does not bar subsequent prosecution by the State. Therefore, if counsel had been appointed for defendant in time to have demanded a preliminary hearing ten days before the next court, as allowed under Section 43–232, and the magistrate had discharged the defendant from custody, it would not have ended the prosecution. The defendant could have still been prosecuted.

"There is no showing that the failure of defendant to sooner request a preliminary hearing, or the failure to accord him one before indictment, in any way deprived him of a fair and impartial trial." (Emphasis added).

It is noted that subsequent to his indictment petitioner was still granted a preliminary hearing. He appeared and was represented by counsel who was given full opportunity to hear the State's evidence against petitioner and to cross examine the State's witnesses.

Numerous other contentions were asserted by petitioner in support of his contention XI that the trial court was without jurisdiction, as is set forth on pages 21 and 22 of his petition in this court. A careful review of the entire record, including the testimony of the witnesses presented by petitioner at his hearing, compels the conclusion that all of such assertions that "the trial court was without jurisdiction" have no factual foundation and are without merit.

X. "THE GRAND JURY THAT RETURNED THE INDICTMENT AGAINST THE PETITIONER WAS NOT A PROPER [sic] CONSTITUTED GRAND JURY."

 In support of this contention petitioner called Charlie E. Taylor who served as foreman of the grand jury that returned the indictment against him. In answer to petitioner's question as to whether he was related to Forte Taylor, the magistrate involved in this case, Mr. Taylor answered in the negative. Mr. Taylor stated he had signed all true bills; that he and all other members of the grand jury were present in open court

when the indictment against petitioner was returned and read by the Clerk of Court in the May Term. This is the customary procedure which has been generally used in the state criminal courts.

Petitioner further maintains that the grand jury was illegally constituted because women were excluded. At the general election in November 1966 the South Carolina voters approved a referendum authorizing a Constitutional Amendment providing for jury service for women. The General Assembly passed an enabling act to implement such amendment at the January 1967 session of the legislature which was signed by the Governor and became effective March 1, 1967. All grand jurors with the exception of six holdovers from the prior year are selected and drawn at the beginning of each year for that entire calendar year. It is the court's conclusion that the South Carolina Supreme Court in State v. Sanders, *supra,* properly disposed of such contention when it held:

"It is first contended that the indictment should have been quashed on the ground that women were excluded from service on the grand jury which indicted him. Article 5, Section 22, of the State Constitution was amended, effective March 1, 1967, so as to make women eligible for jury duty in this State for the first time. 55 Stat. at Large 66. The relevant statutes were amended on July 3, 1967 to implement and conform to the constitutional amendment. 55 Stat. at Large 895.

"Under the provisions of Section 38–52 of the 1962 Code of Laws, the jury box used during the following year is prepared by the Jury Commission in December. Therefore, the grand jury which indicted the defendant on May 22, 1967 was drawn from the jury box which was prepared in December 1966. Section 38–401 et seq., 1962 Code of Laws. That jury box was prepared in accordance with the Constitution and statutes of this State, which, at that time, excluded women from service on juries. However, when the grand jury passed upon the indictment against defendant on May 22, 1967, the Constitution had been amended approximately ninety (90) days prior thereto, on March 1, 1967, making women eligible for jury duty. No change was made in the grand jury, prior to the indictment of defendant, to reflect the change in eligibility of women for jury duty.

"There can be no doubt that the grand jury was properly constituted at the time it was drawn, although women were excluded from service thereon, since their exclusion was in accord with the Constitution at that time. State v. Hollman, 232 S.C. 489, 102 S.E.2d 873; State v. Hamilton, S.C., 159 S.E.2d 607.

"Defendant contends however that, although legally constituted at the time it was drawn, the subsequent constitutional change making women eligible for jury duty rendered the grand jury illegal at the time it acted upon the indictment against him, since it was not reconstituted to include women among the eligible jurors.

"We do not think that the subsequent change of the Constitution would act to make illegal the grand jury which was legally constituted at the time it was drawn. Changes as fundamental as here involved cannot be made overnight, and such a change, generally, is timely made so as to deprive a defendant of no constitutional right, if done in accordance with the usual statutory procedures for selecting and drawing juries. See: Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Jackson v. State of Texas, 161 Tex.Cr.R. 464, 278 S.W.2d 310; York v. United States, 8th Circuit, 167 F.2d 847; State v. Litteral, 227 N.C. 527, 43 S.E.2d 84."

XII. "COURT APPOINTED ATTORNEYS REPRESENTING THE PETITIONER WERE INADEQUATE, INEFECTIVE [sic] AND INCOMPETENT."

Although petitioner's contention that he was inadequately and incompe-

tently represented by his court appointed counsel at his trial was not among his exceptions originally filed in his direct appeal to the South Carolina Supreme Court, he was permitted to present a petition asserting such contention and to argue the same before that court. The State Supreme Court disposed of such contention as follows:

"We have carefully reviewed the trial record in the light of the allegations contained in defendant's petition. We find that the defendant was competently represented by his counsel and that defendant's charges to the contrary are totally and completely without support in the record."

In his habeas hearing before this court petitioner himself testified in support of such contention and also called his court appointed counsel, John H. Hydrick, Jr., whom he cross-examined intensively and rather severely.

Petitioner asserts various grounds wherein he claims that his counsel were inefficient and incompetent in representing him, including their failure to subpoena all of the witnesses which he desired to have present for his trial. He further complains that they failed to secure certain records from the United States Penitentiary in Atlanta which petitioner thought would have been of some assistance in his defense. He also takes issue with their failure to challenge the petit jury panel for cause, the failure to place the jurors on their voir dire, and the failure to request that all State's witnesses be sequestered during the trial. He also asserts that his counsel failed to consult him concerning the jury panel before the selection of the jury, and he is also unhappy about the fact that his counsel used all ten peremptory challenges allowed him in the selection of his jury. He also complained that William F. Rogers was not appointed to assist Hydrick in representing petitioner until September 1, 1967 about a week before his trial. In spite of all of his complaints he admitted in his testimony that, although Hydrick and Rogers had no expense money to work with, he thought they did a good job representing him under the circumstances.

Hydrick's and Rogers' testimony before the court answered and explained fully all of petitioner's complaints about their incompetent representation of him. After a careful review of the entire record, with particular attention to the trial transcript and to the testimony presented at the habeas hearing, the court concludes that, contrary to petitioner's contentions, petitioner was adequately, satisfactorily and commendably represented by his two able court appointed counsel. The record fully substantiates that Mr. Hydrick, over a period of many weeks, and Mr. Rogers during the limited period of his appointment before trial, devoted much time, effort and professional ability in their representation of petitioner. Mr. Hydrick conferred frequently and at length with petitioner; he interviewed numerous witnesses and made a judgment as to the ones who would be subpoenaed for the trial; he obtained a court order from Judge Timmerman to enable him to inspect petitioner's State Hospital records with a view of determining whether he could substantiate a defense of insanity or mental incompetence; he also conferred with petitioner's mother and brother; he attended petitioner's preliminary hearing and cross examined the State's witnesses; he conferred with the State officers and Mr. Moyer of the FBI. A perusal of the trial transcript will readily convince that petitioner's counsel gave him an adequate and effective representation. In fact petitioner commended his counsel during his trial for the fine manner in which they were handling his defense. It is obvious that if he had been acquitted everything would have been fine, but now that he has been convicted and sentenced to a substantial prison term he is unjustly critical of his counsel who gave freely of their time, talents and ability in his defense without any remuneration.

Constitutional requirements do not demand perfect representation of a defendant, Stem v. Turner, 370 F.2d

895 (4th Cir. 1966); however, a defendant is entitled to more than a mere perfunctory appearance of counsel at a trial in his behalf. Surely if a record discloses that the representation of a defendant by his counsel is so inadequate and incompetent that the defendant is denied a fair and impartial trial, then his constitutional rights have been denied and he is entitled to proper relief. This case does not present a factual situation in any way similar or approaching that found in Turner v. State of Maryland, 303 F.2d 507 (4th Cir. 1962), where a court appointed lawyer made a mere perfunctory appearance in court purporting to represent a defendant, but did nothing whatever before or during the trial of his case to advise his client or protect his rights.

Based upon the foregoing findings of fact and conclusions of law it is concluded that none of petitioner's contentions have been established to show that any of his claimed constitutional rights have been denied or violated, or that he has been prejudiced in any manner sufficient to justify the issuance of the Great Writ. Accordingly his petition for writ of habeas corpus is hereby denied on all grounds.