19207

The STATE, Respondent, v. Herbert Lee BRADFORD, Appellant
(180 S. E. (2d) 632)

*Messrs. Ernest A. Finney, Jr., David F. McInnis,* and *Henry B. Richardson, Jr.,* of Sumter, *for Appellant,*

Messrs. *Daniel R. McLeod, Atty. Gen., Emmet H. Clair, John P. Wilson, Asst. Attys. Gen.,* of Columbia, and *R. Kirk McLeod, Esq.,* of Sumter, *for Respondent,*

April 15, 1971.

LEWIS, Justice:

Defendant has appealed from his conviction, in November, 1967 of the crime of rape. The jury recommended mercy and he received a sentence of forty years. The judgment is affirmed.

Although appellant denied the charge of rape, the testimony convincingly established his guilt. The State's evidence showed that the offense, for which appellant was convicted, occurred in a rural section of Sumter County, South Carolina, during the late afternoon of April 14, 1967. The prosecutrix had driven her car to a fish pond on her property and parked it while she fished alone from a boat. In going to the pond, she passed the appellant, and his two companions, Johnnie Capers and James Capers, who were at that time near the pond and saw her pass. The three waited in the woods nearby until the prosecutrix had returned to the bank of the pond and was in the act of removing her fishing gear from the boat, with her back turned, when the appellant, with his companions present, attacked her. The following testimony of the prosecutrix describes the events which followed:

"Well, I was fishing and fished most of the afternoon, and I started in with the boat and * * * went to the car to put some fishing gear in the car and went back to the boat to pick up some more, and this man jumped on my back, caught me, caught around my mouth, and when I turned my head to see what it was and started fighting, and the next thing I knew I was coming up out of the water. He kept pushing my face with his hand, and I went back down in the water several times. And finally he grabbed me in my clothes, and held on to me and told me I need not try to get away, that he could swim. And he said he wanted the pocketbook out of my car, which was in the trunk. And he pulled me around on the bank, and I asked him if I gave him the pocketbook would they go on, and he said yes, that they wanted the pocketbook. And he made me get in the car, he was standing there, and get the keys and unlock the back and give him the pocketbook out of it.

* * *

"I gave him the pocketbook, and I tried to beg him to go and leave me alone. He said he wanted to show me there was no difference in white and colored, * * *. And he made

me walk up close to him and he put his arm around me and pulled me up close to him, and I begged him to please let me go, * * *. And I tried to tell him he was doing wrong, he couldn't get away with it. And I begged the ones with him to please try to reason with him. He had some object in his hand, and he told me to do what he said do. And then he pulled me over to one side out of the road. I tried to get away and he caught me and pushed me down, and said I would do what he said do or he was going to make me do it. And he told me to take my clothes off, * * *. And I was shaking so I couldn't, and so he did." The witness stated that it was at that time "he attacked me," and accomplished his purpose.

Shortly thereafter the Sheriff's office in Sumter County was notified of the incident and the prosecutrix was taken to the hospital. She was examined by the doctors and their testimony corroborated her statement that she had been physically and sexually assaulted.

The prosecutrix identified appellant at the trial as her assailant. James Capers, one of appellant's companions, testified that appellant made the assault upon the prosecutrix and, in the main, corroborated her testimony as to what happened at the time.

Appellant first charges that the trial judge erred in refusing to quash the indictment on the grounds that the grand jury which returned the indictment was biased and prejudiced.

The offense occurred in Sumter County and the indictment was returned by a grand jury in that county. Venue for trial of the case was subsequently changed to Lee County upon a finding by the lower court that it would be extremely difficult, if not impossible, for appellant to receive a fair and impartial trial in Sumter County. When the case was called for trial in Lee County, appellant moved to quash the indictment upon the ground that the grand jury which returned the indictment was biased and prejudiced. The factual basis for the motion was the prior finding by the court that appel-

lant could not obtain a fair trial before a petit jury in Sumter County. It is argued that, if a petit jury in Sumter County would have been prejudiced and biased against appellant, the grand jury in the same county was also prejudiced and therefore he was denied the right to have an unbiased grand jury determine whether probable grounds existed for the prosecution.

The motion to quash the indictment because of the alleged prejudice of the grand jury was not made until the case was called for trial in Lee County, which was after defendant's motion for a change of venue had been granted by the court in Sumter County. Section 17-458 of the 1962 Code of Laws, enacted in accord with Article 6, Section 2, of the South Carolina Constitution, provides, with reference to change of venue in criminal cases:

"No change of venue shall be granted in such cases until a true bill has been found by a grand jury."

As held in *State v. Richardson,* 149 S. C. 121, 146 S. E. 676, "by making the motion for a change of venue, which could only be made under the conditions named, the defendants have recognized the fact, or are estopped from denying, that a true bill, a valid bill, had been returned. Their time to object was when the bill was returned, and their failure to object then was a waiver of the irregularity complained of."

The trial judge also denied a motion by appellant to quash the indictment upon the ground that the grand jury which returned the indictment did not have before it any legal evidence upon which to base their finding of a true bill. Appellant charges that this was error.

The motion was without a factual foundation to support it and was properly denied by the trial judge.

It is contended however that the trial judge should have permitted the introduction of testimony by certain of the grand jurors, whom appellant offered as

witnesses, to show the facts upon which the grand jury based its determination. The trial judge properly refused to permit the grand jurors to so testify. It is a settled rule "that grand jurors cannot testify as to how they or any of their fellows voted, as to what induced them to find an indictment, or as to opinions voiced by their fellows or themselves upon any question properly before the Grand Jury. 24 Am. Jur. 866, Section 48." *Margolis v. Telech,* 239 S. C. 232, 122 S. E. (2d) 417. Also *State v. Sanders,* 251 S. C. 431, 163 S. E. (2d) 220.

While we find that there was no factual basis to support the motion, it was also properly denied because not timely made. *State v. Richardson, supra,* 149 S. C. 121, 146 S. E. 676.

The next questions concern the mental capacity of the appellant. Motion was unsuccessfully made to quash the indictment or in the alternative for a continuance on the grounds that the appellant did not have mental capacity to meaningfully participate in his defense or to understand the nature of the proceedings against him. There was testimony that appellant was not insane, but was feeble minded, with an I.Q. of fifty-five and a mental age of nine years. The record does not support the contention that appellant was of insufficient mentality to meaningfully participate in his defense or understand the nature of the charges against him. He testified in his own defense, denied the charges of rape, and intelligibly related his version of what happened. Insanity was not plead as a defense and the ultimate effect of appellant's contention is that he could never be tried for the offense charged. Neither the facts nor the law dictate any such result in this case. The motion to quash the indictment was properly denied.

Error is also charged in the refusal of the trial judge to instruct the jury, at appellant's request, "that the mental condition, intelligence, responsibility, judgment and maturity of the accused can be taken into consid-

eration by the jury." The request was properly refused. There was no contention that the appellant was insane. The fact that the appellant was mentally retarded constituted no defense to the crime. We stated the applicable rule as follows in *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130:

"Criminal responsibility does not depend upon the mental age of the defendant, nor upon whether his mind is above or below that of the average or normal man. Subnormal mentality is not a defense to crime unless the accused is by reason thereof unable to distinguish between right and wrong with respect to the particular act in question."

To the same effect see statement in 21 Am. Jur. (2d), Criminal Law, Section 28.

If it be contended that the instruction was proper upon the issue of punishment, no prejudice could have resulted to appellant from its refusal. The question submitted to the jury concerned appellant's guilt of the crime of rape and, if he was found guilty, whether he would be recommended to mercy. The only effect of such a recommendation was to reduce the punishment. Since the jury rendered the most lenient guilty verdict, the failure to give the requested instruction could not have prejudiced the defendant in so far as punishment was concerned.

Appellant also asks us to change the legal test for insanity in this State from that of the M'Naghten Rule to the so-called Freeman Rule. The short answer to this request is that insanity was not interposed as a defense, and the question as to the proper legal test for insanity was not an issue in the lower court. Therefore, it is not an issue in this appeal.

Appellant also moved to quash the indictment on the ground that Negroes were systematically excluded from the grand and petit juries in Sumter and Lee Counties. The trial judge denied the motion and properly so. There was admittedly a total absence of any factual showing to support the motion.

It is next contended that there was no evidence to sustain the conviction for rape in that there was no showing of penetration, a necessary element of the offense. We will not review the evidence in detail on this question. We are satisfied that there was evidence to sustain every element of the offense, including that of penetration. The evidence on behalf of the State with reference to the assault has been previously stated. In addition, the testimony of the doctor who examined the prosecutrix shortly after the occurrence establishes the presence of male sperm in the female organ. This, together with the other evidence, established ample factual basis for the conclusion of the jury that the crime of rape had been committed.

It is also contended that the method employed by the State in having the prosecutrix identify the defendant during the trial deprived him of due process. Although the prosecutrix had not seen defendant since the assault, she identified him during the trial.

The record discloses no objection to the procedure followed in the trial identification of the defendant by the prosecutrix and she was cross-examined thereabout without reservation, amounting to a waiver of the present objection.

Error is also charged in the refusal of the trial judge to permit the introduction of a copy of the entire testimony taken at the preliminary hearing. The exclusion of the preliminary hearing testimony was proper. *State v. White,* 243 S. C. 238, 133 S. E. (2d) 320.

The position is also taken that error was committed by references at the trial to (1) the pocketbook of the prosecutrix, (2) a yellow shirt, and (3) pre-trial statements of the defendant. There is no merit in these contentions.

The prosecutrix was robbed of her pocketbook. After the arrest of the defendant, he assisted the Sheriff in locating it. The pocketbook was admitted in evidence at the trial. Sub-

sequently, defendant testified that he was present at the scene and took the pocketbook from the prosecutrix. Defendant therefore admitted everything that the introduction of the evidence established, that is, that he was at the scene and robbed the prosecutrix of her pocketbook.

Witnesses testified that defendant was wearing a yellow shirt at the time of the commission of the crime. A yellow shirt was obtained from defendant's home as a result of an illegal search. This shirt was offered in evidence at the trial but excluded by the trial judge. It was subsequently referred to again by the solicitor in his cross-examination of the defendant. Defendant argues that the references to the yellow shirt were highly prejudicial, especially the further attempt to introduce it after it had been ruled inadmissible. The references to the yellow shirt could not have resulted in legal prejudice to the defendant. The only purpose in offering the shirt in evidence was to identify the defendant as one of those present at the scene of the crime. When defendant testified, he admitted his presence at the scene, and prior efforts of the State to prove that which he subsequently admitted could not have resulted in prejudice to him.

If defendant gave a statement to the officers, it was never introduced in evidence or used against him.

Appellant also contends that he was prejudiced by certain arguments made by the solicitor to the jury. The full argument of the solicitor is not shown and the references to such in the record are meagre. It does appear however that objections were interposed to the solicitor making a "comparison between this accused and a mad dog," a statement that "electrocution is too good for him (the accused)", and a statement that "this defendant showed no mercy to this lady." The court sustained the objection to the first two statements and instructed the jury to disregard them. As to the last, the solicitor was admonished to confine his argument to the facts. Counsel for defendant also moved for a mistrial because of the alleged prejudicial argument, which was denied.

The question of whether the arguments materially prejudiced defendant's right to a fair and impartial trial depends in a large measure upon the facts and circumstances of the case.

While the exact context in which the arguments in question were made does not appear, they were apparently made by the solicitor with reference to the penalty to be imposed by the jury, that is, the death penalty or a recommendation to mercy which would carry a punishment for a term of years. The recommendation of mercy by the jury strongly indicates that the arguments failed to have the inflammatory or prejudicial effect which defendant attributes to them.

Under all of the facts and circumstances we find no basis upon which to hold that material prejudice resulted to defendant from the argument in question.

Error is also charged in the alleged failure of the trial judge to instruct the jurors that their verdict must be unanimous. Article 5, Section 22 of the Constitution of this State provides: "The petit jury of the circuit courts shall consist of twelve persons, all of whom must agree to a verdict in order to render the same."

The jury was instructed that, in order to render a verdict of guilty, the jurors, "each and all of you," must be so convinced beyond a reasonable doubt. When opportunity was afforded at the conclusion of the charge, no objection was made that the foregoing instruction was inadequate nor was any additional request made to have the jurors further instructed as to the requirement that their verdict must be unanimous. The failure to timely request a specific instruction that the verdict of the jury must be unanimous constituted a waiver of any right to complain on appeal of such alleged error in the charge. *State v. Hall,* 253 S. C. 294, 170 S. E. (2d) 379.

In any event, there was no error in the failure to specifically instruct the jury that their verdict must be unanimous. *State v. Logue,* 204 S. C. 171, 28 S. E. (2d) 788.

Finally, appellant contends that he is entitled to a new trial upon the ground that the State withheld from him knowledge of microscopic chemical analyses of clothing worn by him and the prosecutrix. These tests were apparently made by the Federal Bureau of Investigation and addressed to the Sheriff of Sumter County under date of May 17, 1967, prior to appellant's trial. Present counsel for appellant state that the report of the chemical analysis made by the F. B. I. first came to the knowledge of appellant when it was discovered among papers turned over by the State to counsel after his post-trial appointment in April, 1970 to represent appellant. It is contended that the tests made by the F. B. I. tend to establish that there was no intimate contact between appellant and the prosecutrix.

The question now sought to be raised was not presented in the lower court and the record is devoid of any factual basis for the present claim that the State illegally withheld information from the appellant.

Since the question was not presented in the court below, it will not be considered on appeal. *State v. Alexander,* 230 S. C. 195, 95 S. E. (2d) 160.

All exceptions are overruled and judgment is affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.