ANNA LEE JACKSON V. STATE

No. 27,536. May 4, 1955

No attorney for appellant of record on appeal.

*Dan Walton,* District Attorney, *Eugene Brady,* Assistant District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, two years.

The homicide occurred at the appellant's home after three o'clock in the morning. The appellant and deceased were alone at the time of the homicide. The appellant's husband was out of town. The appellant and deceased had been together at a tavern earlier in the evening and had arrived at appellant's home about midnight.

The state's evidence as to what transpired immediately prior to the homicide came from the dying declarations of the deceased and statements made by the appellant, presumably prior to her arrest.

Officer Randio testified that he went to the hospital and saw the deceased shortly after the shooting and before his death, that the deceased said "he was going to die; couldn't make it because he was shot bad," that the deceased further told him that he had been at appellant's home for approximately three hours before she shot him, that during that time he had made three attempts to leave, that on the first two attempts the appellant forcefully prevented him from leaving and on the third she pulled out a gun and shot him as he sat on a couch.

Officer Armstrong testified that he went to the appellant's home shortly after the shooting, found the deceased lying on the floor, and got a pistol from the appellant. He testified, without objection, that the appellant told him that she had written out a statement which she wanted the deceased to sign, that he refused to do so, that she went to the telephone and he hit her with a boot, that she ordered the appellant to leave, that she then went and got a pistol and started shooting at the deceased's feet as he sat on her sofa, that she shot four times and the deceased got up and tried to take the gun away from her, that she emptied the gun at him and then hit him over the head with the pistol and he finally went down. No weapons were found on the body of the deceased.

Appellant testified in her own behalf that the deceased, who

had been a roomer in her home, had mistreated her badly prior to the night of the homicide and had often threatened her; that she had agreed to meet him that night in order "to have a reconciliation with the man, get him in a nice humor until Jack (her husband) came home"; that the cab driver brought them home after midnight and came in the house with them; that the men had a drink and the cab driver left; that she sat there and talked to the deceased and tried to get him to make a statement in writing concerning some of his mistreatments of her; that he refused; that she went to the telephone to call the police chief, and the deceased hit her in the head with a boot; that she pushed him back and went in the bedroom, got the pistol and returned; and that she fired at his feet as he sat on the sofa. She stated that the deceased got up and grabbed her by the arm and they fell, but that the pistol was empty by that time and she hit him across the face with the pistol. She denied that she had ever been intimate with the deceased but admitted having gone out with him at night while her husband was out of town.

The jury resolved the disputed issue of self-defense against the appellant, and we find the evidence sufficient to support the conviction.

Bill of Exception No. 1 relates to the admission of the dying declarations of the deceased. If there was any error in the admission of such testimony, the same was cured when the appellant testified about the same matters.

Bill of Exception No. 2 and a challenge to the array and motion to quash the jury panel raise the question of the absence of women on the panel from which the jury was drawn to try this case.

The trial began and the motion was filed on November 22, 1954. The Constitutional Amendment (Section 19 of Article XVI) making women eligible for jury service became effective on November 19, 1954. Wilson v. State, 15 Texas Ct. App. 150; Texas Water & Gas Co. v. City of Cleburne, 21 S.W. 393; and Torres v. State, No. 27,503, (page 480, this volume).

Harris County is a jury wheel county. The jury wheel from which this panel was drawn was filled in August, 1954, in compliance with Article 2094, V.A.C.S. Women were not qualified for jury service when this wheel was filled, and clearly their exclusion at that time was proper. Since we have been favored

with no brief in behalf of the appellant, we do not know what her contentions are or upon what authority she relies. However, we gather from the motion that she was contending that the names of qualified women should have been added to the jury wheel by the officers in charge thereof after the effective date of the constitutional amendment. We shall discuss that question.

It must be borne in mind that there is no legislative authority for filling the jury wheel at any time except in August of each year.

It may be argued that the district judges throughout the state should have, immediately after the effective date of the constitutional amendment, on their own motion, entered orders requiring those in charge of the jury wheels to empty them and then refill them from a list which included the names of qualified women jurors. In Knott v. State, 100 Texas Cr. Rep. 468, 274 S.W. 978, McNeal v. State, 101 Texas Cr. Rep. 114, 274 S.W. 981, and Hart v. State, 101 Texas Cr. Rep. 514, 276 S.W. 233, we approved such a procedure where it was shown that the wheels had not been filled in accordance with the statute in force at the time they were filled. It should be noted, however, that we held that the proper list from which the wheels were to be refilled was the list of jurors who were qualified at the time of the original drawing, to-wit: the preceding August.

We think the answer to the question propounded lies in the above holdings. It would have been futile for the judges to have ordered the jury wheels emptied and refilled if they could add no new names to the list from which the wheel was to be refilled.

The Constitution in force at the time the jury wheels were filled did not authorize women serving on juries. No possible inference could be drawn that there was discrimination in the filling of the instant jury wheel, the wheel having been filled in accordance with law, prior to the adoption of the constitutional amendment.

The Supreme Court of the United States, in Glasser v. U.S., 315 U.S. 60, 86 L. Ed. 680, has recognized that changes as fundamental as the one with which we are confronted here cannot be made overnight. Justice Holmes in Bain Peanut Co. of Texas et al v. Pinson et al, 51 Sup. Ct. Rep. 228, 282 U.S. 499, said, "We must remember that the machinery of government would not work if it were not allowed a little play in its joints."

We hold that the jury lists drawn in August, 1954, were properly drawn and that the absence of the names of women on the lists from which the jury wheel was filled until they are again filled in accordance with the statute in August, 1955, does not constitute discrimination.

Finding no reversible error, the judgment of the trial court is affirmed.