18823

The STATE, Respondent, v. Ernest Leroy SANDERS, Appellant.

(163 S. E. (2d) 220)

*W. L. Cooper, Jr.,* and *Phillip K. Wingard,* of Lexington, and *Forrest K. Abbott,* of Cayce, *for Appellant,*

434

*Messrs. Daniel R. McLeod, Attorney General* and *Edward B. Latimer* and *Emmet H. Clair, Assistant Attorneys General,* of Columbia and *Hubert E. Long, Solicitor,* of Lexington, *for Respondent,*

Sept. 5, 1968.

LEWIS, Justice.

Defendant's appeal from a conviction of the crime of forgery presents the following questions for determination:

(1) Was there any competent evidence to sustain defendant's conviction?

(2) Was defendant entitled to have the grand jury polled to determine if the required number concurred in the return of the indictment against him?

(3) Did the court err in refusing to quash the indictment upon the grounds that (a) women were excluded from service on the grand jury which indicted defendant, (b) counsel were not timely appointed to represent the defendant, and (c) the indictment was rendered prior to a preliminary hearing and therefore the court had no jurisdiction of the cause.

(4) Did the indictment contain language which was irrelevant and prejudical to the defendant?

(5) Did the admission in evidence of defendant's signature to a Federal Bureau of Investigation document constitute evidence of other crimes so as to prejuidce defendant's right to a fair and impartial trial?

(6) Did the trial judge permit the solicitor to make improper and prejudicial argument to the jury?

(7) Did the imposition of the maximum sentence amount to an abuse of discretion by the trial judge?

(8) Was the defendant entitled to credit against his sentence for the time spent in jail awaiting trial?

The charge against the defendant concerned a check in the amount of $56.00, payable to defendant, and purportedly signed by "W. Manning Harris, Lake Murray Development Co." There is testimony that the defendant carried this check to one George W. Johnson, a retail liquor dealer, endorsed it, and obtained cash and liquor for the face amount thereof. The check was turned down and it subsequently developed that it was a forgery. A handwriting expert testified, from a comparison of the signatures on the check with defendant's handwriting, that the check was signed by defendant. There was therefore testimony that the defendant forged the name of W. Manning Harris to the check in question and that he presented it to the liquor store dealer as genuine. Such constituted ample evidence to sustain defendant's conviction of the crime of forgery and the trial judge properly so held.

The next question concerns the refusal of the trial judge to poll the grand jury. Defendant was indicted by the grand jury on May 22, 1967. His motion for a continuance was granted at that time and the case was subsequently called for trial on September 6th, 1967. Upon the call of the case for trial on September 6th, defendant requested that the grand jury be polled to determine if the required number concurred in the return of the indictment against him.

Under Article 5, Section 22, of the South Carolina Constitution, the grand jury consists of eighteen (18) members, twelve of whom must agree before an indictment can be submitted to the court. Defendant in this instance sought to have the court poll the grand jury to determine if twelve members agreed to a return of the indictment against him.

To poll the jury means "to examine each juror separately, after a verdict has been given, as to his concurrence in the verdict." Black's Law Dictionary, Fourth Edition, Page 1320.

While the court must be satisfied that at least twelve members of the grand jury agreed to the present- ment, the defendant had no right to have the grand jury polled. Such is prohibited by the cloak of secrecy which has always been thrown around the deliberations of that body. The rule adhered to in this State was thus stated in *State v. Rector,* 158 S. C. 212, 155 S. E. 385, 390: "No one, not even the presiding judge, may invade the secrecy of the grand jury's deliberations, to inquire what influences moved them in their acts, or to ascertain how any member may have voted. So, the trial judge in this case was clearly right when he ruled that he could take no step looking to the obtaining of information as to the number of grand jurors concurring in the indictment, and if the necessary number, who did concur, included one or more of the members who were not registered electors." See also: 24 Am. Jur., Grand Jury, Section 48 (including Cumulative Supp.) ; Anno: 127 A. L. R. 289.

The record shows that a *true bill* was rendered on the in- dictment against the defendant. The established procedure in this State is for the action of the grand jury to be en- dorsed on the indictment over the signature of the foreman. The indictment is then presented to the court where, in open court and in the presence of the grand jury, the clerk of court reads the action taken. Opportunity is thus afforded any member of the grand jury to disagree with the correct- ness of the presentment read by the clerk. There is nothing to indicate that the court deviated from the established pro- cedure in this case.

There is no fact or circumstance intimated in this record which would indicate that the indictment was not the result of the agreement of at least twelve members of the grand jury. Certainly defendant was not entitled to have the grand jury polled to ascertain their in- dividual action and there is nothing to show that the pro- cedure adopted by the court in receiving the presentment of the grand jury did not adequately assure that it had re-

ceived the assent of the requisite number of jurors. The procedure to be adopted and the inquiry to be made in the reception of the indictment by the court, short of a poll of the grand jury, to assure that the requisite number of grand jurors agreed to the presentment is a matter left to the sound discretion of the trial judge and will not be disturbed in the absence of a clear showing of abuse thereof. None has been shown.

The next questions concern the several grounds upon which defendant moved to quash the indictment.

It is first contended that the indictment should have been quashed on the ground that women were excluded from service on the grand jury which indicted him. Article 5, Section 22, of the State Constitution was amended, effective March 1, 1967, so as to make women eligible for jury duty in this State for the first time. 55 Stat. at Large 66. The relevant statutes were amended on July 3, 1967 to implement and conform to the constitutional amendment. 55 Stat. at Large 895.

Under the provisions of Section 38-52 of the 1962 Code of Laws, the jury box used during the following year is prepared by the Jury Commission in December. Therefore, the grand jury which indicted the defendant on May 22, 1967 was drawn from the jury box which was prepared in December 1966. Section 38-401 *et seq.*, 1962 Code of Laws. That jury box was prepared in accordance with the Constitution and statutes of this State, which at that time, excluded women from service on juries. However, when the grand jury passed upon the indictment against defendant on May 22, 1967, the Constitution had been amended approximately ninety (90) days prior thereto, on March 1, 1967, making women eligible for jury duty. No change was made in the grand jury, prior to the indictment of defendant, to reflect the change in eligibility of women for jury duty.

There can be no doubt that the grand jury was properly constituted at the time it was drawn, although women were excluded from service thereon,

since their exclusion was in accord with the Constitution at that time. *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873; *State v. Hamilton,* S. C. 159 S. E. (2d) 607.

Defendant contends however that, although legally constituted at the time it was drawn, the subsequent constitutional change making women eligible for jury duty rendered the grand jury illegal at the time it acted upon the indictment against him, since it was not reconstituted to include women among the eligible jurors.

We do not think that the subsequent change of the Constitution would act to make illegal the grand jury which was legally constituted at the time it was drawn. Changes as fundamental as here involved cannot be made overnight, and such a change, generally, is timely made so as to deprive a defendant of no constitutional right, if done in accordance with the usual statutory procedures for selecting and drawing juries. See: *Glasser v. United States,* 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680; *Jackson v. State of Texas,* 161 Tex. Cr. R. 464, 278 S. W. (2d) 310; *York v. United States,* 8th Circuit, 167 F. (2d) 847; *State v. Litteral,* 227 N. C. 527, 43 S. E. (2d) 84.

Defendant next argues that the indictment should have been quashed because the court failed to make a timely appointment of counsel to represent him. He was arrested on November 4, 1966 and on November 6, 1966 was admitted to the South Carolina State Hospital for a mental examination, where he remained for a period of approximately four months. He was released from the State Hospital on March 8, 1967 and was thereafter kept in custody in the Lexington County jail until his trial on September 6th and 7th, 1967. While in the State Hospital defendant requested to see a lawyer and while in jail requested that a lawyer be appointed to represent him. However, a lawyer was not appointed until May 9, 1967, approximately six months after his arrest. The record contains no explanation for the failure to sooner do so.

Although there is no explanation of the failure to sooner have counsel appointed for defendant, there is no showing that such delay deprived defendant of a fair and impartial trial.

Counsel was appointed to represent defendant on May 19, 1967. He was indicated by the grand jury on May 22, 1967. A preliminary hearing was demanded on May 24, 1967. The case was called for trial on May 26th and a continuance granted on defendant's motion. A preliminary hearing was subsequently held before a magistrate and, since an indictment was pending against defendant on the charge, the case was returned to the court for trial. The trial was held on September 6th and 7th, 1967, approximately four months after counsel was appointed to represent defendant.

There is no showing the defendant was deprived of representation by counsel at any critical stage of the proceedings. His conviction was not brought about or affected in any way by evidence, confession or otherwise, obtained as a result of his detention. Neither is there any showing that the failure to sooner appoint counsel adversely affected defendant's ability to obtain evidence in his behalf.

It is also contended that the indictment was rendered prior to a preliminary hearing and that the court was therefore without jurisdiction of the cause. Defendant apparently relies in this connection upon Section 43-232 of the 1962 Code of Laws. This section provides that "(a) ny magistrate who issues a warrant charging a crime beyond his jursidiction shall grant and hold a preliminary investigation of it upon the demand in writing of the defendant made at least ten days before the convening of the next court of general sessions * * * as to whether a probable case has been made out and as to whether the case ought to be dismissed by the magistrate and the defendant discharged without delay." And, "when such a hearing has been so demanded the case shall not be transmitted to the court of general sessions or submitted to the grand jury until the preliminary

hearing shall have been had, the magistrate to retain jurisdiction and the court of general sessions not to acquire jurisdiction until after such preliminary hearing."

The provisions of Section 43-232 which preclude the acquisition of jurisdiction by the court of general sessions until after a preliminary hearing is held is conditioned upon the demand for such hearing in writing at least ten days before the convening of the next court. It is only where timely demand has been made for a preliminary hearing that acquisition of jurisdiction by the court of general sessions is delayed. As stated in *State v. Irby,* 166 S. C. 430, 164 S. E. 912, 913; "[i]t is not necessary that there shall be a preliminary hearing before a grand jury can indict a person charged with a crime. One may waive the right to such hearing by simply failing to ask for it, as was done in this case."

The fact that defendant was not represented by counsel in time to request a preliminary hearing "at least ten days before the convening of the next court," so as to prevent the court of general sessions from obtaining jurisdiction as provided in Section 43-232, in no way prejudiced defendant.

A preliminary hearing in South Carolina is not a critical stage of criminal proceedings against a defendant. *State v. White,* 243 S. C. 238, 133 S. E. (2d) 320.

If a defendant is discharged by a magistrate at a preliminary hearing, such is not a final determination of the charge and does not bar subsequent prosecution by the State. Therefore, if counsel had been appointed for defendant in time to have demanded a preliminary hearing ten days before the next court, as allowed under Section 43-232, and the magistrate had discharged the defendant from custody, it would not have ended the prosecution. The defendant could have still been prosecuted.

There is no showing that the failure of defendant to sooner request a preliminary hearing, or the failure to ac-

cord him one before indictment, in any way deprived him of a fair and impartial trial.

Defendant next contends that the trial court erred in failing to strike certain allegations from the indictment as irrelevent and prejudicial. While defendant's motion was, in form, to dismiss the indictment upon the foregoing ground, it is apparent that he intended it as a motion to strike the challenged language and we have so considered it.

The indictment charged that the defendant "with force and arms, at the Lexington County Court House * * *, did falsely make, forge and counterfeit" the check in question. It is argued that the use of the language "with force and arms" was prejudicial to the defendant in that it conveyed the idea of the use of force and violence in the commission of the forgery; and that the use of the word "counterfeit", in effect, charged the defendant with the additional crime of counterfeiting.

Allegations in an indictment that the crime was committed "with force and arms" denotes that the alleged act was done with violence. It appears that at one time, under the common law, the use of the words "with force and arms" was considered necessary in an indictment charging an offense involving the use of physical force, but was never necessary where no physical force was involved. In any case, such allegations would now appear to be unnecessary. 42 C. J. S. Indictments & Informations § 103; *State v. Harris,* 106 N. C. 682, 11 S. E. 377; 27 Am. Jur., Indictments & Informations, Section 67; Black's Law Dictionary, Fourth Edition, Page 774; Section 17-402, 1962 Code of Laws.

The crime of forgery involved no element of physical violence. Therefore, allegations that it was committed "with force and arms" were unnecessary to allege the offense and should have been stricken from the indictment.

While the indiscriminate use of obsolete and inappropriate allegations in indictments is not approved, we find no

prejudice to defendant in this case from the allegations that the offense was committed "with force and arms." The jury was properly instructed as to the elements of the offense charged and there is nothing to indicate that such allegations in any way affected the verdict.

Prejudice is also claimed from the use of the word "counterfeit" in the indictment. It is claimed that such amounted to a charge of counterfeiting in addition to the crime of forgery. There is no merit in the contention.

Section 16-351 of the 1962 Code of Laws provides that "[w]hoever shall be convicted (a) of falsely making, forging or counterfeiting, * * * any writing or instrument of writing, * * *, shall be guilty of forgery * * *." One of the established meanings of "counterfeit" is to forge; and in this sense the words "forge" and "counterfeit," as used in the statute, are synonymous. It is evident from the indictment that the term "counterfeit" was used in describing the act of the defendant in forging the check in question and did not charge a separate offense as defendant contends. The indictment followed the language of Section 16-351 defining the offense and was sufficient. Section 17-402, 1962 Code of Laws.

The next question concerns defendant's contention that he was prejudiced by the admission of testimony relative to the commission of other crimes by him, thereby placing his character in evidence when he had not first tendered the issue. We need not pursue the accuracy of the factual basis for this question for the defendant subsequently testified that he was 49 years of age and had spent 26 years of his life in prison, a portion of which was under sentences for forgery. Since defendant testified fully as to the fact of his previous convictions, any objection that he might have had to similar testimony or reference thereto on the part of the State was thereby waived.

Defendant also argues that the trial judge permitted the solicitor to make improper and prejudicial argument to the

jury. The argument to which specific objection is directed was as follows:

"* * *, if a man lives by God's law, then he lives or is motivated, if he is motivated by proper reasons of living then we do not have anything to worry about. But when a man does not live that kind of life, then the only fears that that man knows is the fear of man's law. Otherwise, this world would become a jungle with no one being able to live safely with no one's property being safe at all. And when people fall into that category our criminal courts are for the purpose of letting them know that even though they don't care about what is right or wrong morally, even though they don't care about living by right principles, that at the same time we, the people will let them know that if they take that attitude that they can't live in this world and make it a jungle for their fellowman."

The foregoing argument was made in connection ■ with other statements concerning the duty of citizens to abide by the law and the duty of courts to punish those who violate them. Although the argument is subject to some criticism, when taken in context and in connection with defendant's admission that he had served 26 years of his life in jail for various offenses, we think that the trial judge properly exercised his discretion in ruling that the argument was not prejudicial.

The trial judge imposed a sentence upon defendant of seven years and a fine of $5,000.00, the penalty of seven years being the maximum period of confinement permitted under the statute. Section 16-351, 1962 Code of Laws. The defendant contends that the imposition of the maximum sentence constituted an abuse of discretion by the trial judge.

It is the established rule in this State that this court ■ will not set aside a sentence as excessive, "when it is within the limits prescribed by law for the discretion of the trial judge, and is not the result of partiality, prejudice, oppression, or corrupt motive." *State v. Steadman,* 216 S. C. 579, 59 S. E. (2d) 168, 182.

The trial judge had before him the past criminal record of the defendant, which apparently consisted of previous convictions for the same offense. While the sentence is large, it does not appear that the trial judge was guilty of an abuse of discretion within the rules laid down in our prior decisions.

The last question presented involves defendant's contention that the trial judge erred in failing to give him credit for the time spent in jail prior to sentence. Defendant was arrested on November 6, 1966 and remained in custody until he was sentenced on September 7, 1967. He therefore remained in custody, prior to sentence, a period of approximately ten months. Since the trial judge imposed the maximum period of confinement permitted as punishment for the crime of forgery, it is obvious that defendant was not given credit for the ten months spent in jail awaiting trial. Defendant contends that the maximum sentence, without credit for the pre-sentence time spent in jail, amounted to the imposition of cruel and unusual punishment, prohibited by the Constitution.

Section 55-11 of the 1962 Code of Laws provides that "[t]he computation of the time served by prisoners under sentences imposed by the courts of this State shall be reckoned from the date of the imposition of the sentence. But when (a) a prisoner shall have given notice of intention to appeal, (b) the commencement of the service of the sentence follows the revocation of probation or (c) the court shall have designated a specific time for the commencement of the service of the sentence, the computation of the time served shall be reckoned from the date of the commencement of the service of the sentence."

While the request of defendant for credit for his pre-sentence jail time has considerable appeal, there is no statute in this State requiring the trial judge to give a prisoner credit for the time spent in custody prior to trial and, in the absence of such statute, the rule appears to be that a prisoner is not entitled as a matter of right to credit

for his presentence jail time. 24B C. J. S. Criminal Law § 1995(5).

The defendant's sentence began on the date of its imposition. The time for which credit is sought was spent in jail awaiting trial and not pursuant to any punishment imposed for the crime charged. Since the presentence jail time was no part of the punishment imposed, it cannot be considered in determining whether the punishment was cruel or unusual.

In addition to the questions presented by the exceptions, defendant has presented a petition to the court in which he contends that he was incompetently represented by his court-appointed counsel. We have carefully reviewed the trial record in the light of the allegations contained in defendant's petition. We find that the defendant was competently represented by his counsel and that defendant's charges to the contrary are totally and completely without support in the record.

All exceptions are overruled and the judgment is affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.