## 2386

The STATE, Respondent v. Francis Lamont ADAMS, Appellant.

(462 S.E. (2d) 308)

Court of Appeals

*Deputy Chief Attorney Joseph L. Savitz, III* and *Assistant Appellate Defender Lisa T. Gregory, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Attorney General Charles W. Gambrell, Jr.,* and *Assistant Attorney General Anne Hunter Young,* Columbia, *for respondent.*

Heard June 7, 1995.

Decided Aug. 7, 1995; Reh. Den. Sept. 29, 1995.

HEARN, Judge:

Francis Lamont Adams was convicted of conspiracy to traffic cocaine on July 18, 1994, and he was sentenced to twenty-five years with a $200,000 fine. On appeal, Adams asserts the trial court erred in admitting evidence of a sale of cocaine involving the State's primary witness because the transaction was not part of the conspiracy. He also contends the trial court lacked subject matter jurisdiction because the state grand jury was improperly impaneled. We affirm.

### *Evidence of the Conspiracy*

The state grand jury was impaneled on April 22, 1992. In

March of 1993, Adams was named along with nineteen other individuals as defendants in the third superseding indictment issued by this grand jury on several drug charges. Adams was tried with two other defendants on July 18, 1994.

At trial, the State's primary witness was a known drug dealer, Edward Gray, IV. The evidence of cocaine transactions involving Gray, Adams and several others is compelling and extensive. In summary, Gray began purchasing cocaine from Adams in the spring of 1991. After a few months, Gray began selling cocaine to Adams as well. Throughout their relationship, both men purchased drugs from sources in New York, Georgia, and New Jersey. Sometimes only one of the men travelled to these places, bringing back cocaine and then selling a portion of it to the other man. On other occasions, both men travelled together to purchase the cocaine and to bring it back into South Carolina for distribution to third persons.

Gray was arrested on April 6, 1992. Thereafter, he began cooperating with authorities to set up undercover buys. On August 12, 1992, Gray set up a drug buy from their Atlanta source, Reginald Jones. Gray travelled to Atlanta to purchase the drugs with undercover agents, whereupon Jones was arrested. Adams claims the evidence of this transaction was improperly admitted against him because Gray was no longer a co-conspirator and, thus, this transaction was not an act in furtherance of the conspiracy.

The acts and declarations of any conspirator made during the pendency of the conspiracy, and in furtherance thereof, are deemed acts and declarations of every other conspirator. *State v. Ferguson,* 221 S.C. 300, 70 S.E. (2d) 355, *cert. denied,* 344 U.S. 830, 73 S.Ct. 35, 97 L.Ed. 646 (1952). Once the conspiracy ends, however, the acts and declarations of a co-conspirator are inadmissible against the other conspirators. *State v. Mikell,* 257 S.C. 315, 185 S.E. (2d) 814 (1971). Additionally, while conspirators are responsible for all incidental and consequential acts growing out of a general design, conspirators are not responsible for the independent acts of any one conspirator. *State v. Woods,* 189 S.C. 281, 1 S.E. (2d) 190 (1939).

Based on these principles, Adams argues Gray was no longer a conspirator because he was working for the police, and therefore the transaction which occurred

between Gray and Jones in Atlanta did not further the conspiracy and is inadmissible. Essentially, Adams would classify this transaction as an independent act, and not an activity of the conspiracy. We disagree.

In *State v. Holmes*, 277 S.C. 232, 234, 285 S.E. (2d) 353, 354 (1981), the South Carolina Supreme Court upheld the convictions of two co-conspirators, reasoning that the "participation of an undercover agent '[I]n conjunction with more than one person to violate a law . . . will not preclude a conviction of the others for a conspiracy among themselves (citations omitted).'" In this case, the State presented testimony concerning the extensive network of persons involved in the conspiracy starting in the spring of 1991. The evidence shows that prior to Gray's arrest, Adams was routinely in Atlanta with Gray to purchase cocaine from Jones. At times, Gray would travel to Atlanta alone and bring back the cocaine to Adams. Even though Gray was working for the police during the transaction which occurred on August 12, 1992, the act of purchasing cocaine from Jones furthered the existing conspiracy, which still included Adams and several others. The conspiracy for which Adams was convicted was ongoing, even after Gray's arrest. Indeed, the State presented evidence of Adams's continued activity in the conspiracy even after Jones was arrested. Therefore, the transaction with Jones, a co-conspirator, in August of 1991 was an act imputable to all conspirators, including Adams. The participation of Gray did not terminate the conspiracy as to the others.

Even assuming the trial court erred in admitting evidence of the August transaction between Jones and Gray, Adams has failed to demonstrate any resulting prejudice. *See, e.g., State v. Knight*, 258 S.C. 452, 189 S.E. (2d) 1 (1972) (a conviction will not be reversed for nonprejudicial error in the admission of evidence). The State presented overwhelming evidence of Adams's guilt, and the additional single transaction was merely cumulative to that evidence. *See State v. Bernotas*, 277 S.C. 106, 283 S.E. (2d) 580 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed. (2d) 134 (1982). Therefore, the admission, even if in error, was harmless.

### Subject Matter Jurisdiction

Adams next contends the trial court lacked subject matter jurisdiction because the state grand jury was not properly impaneled under S.C. Code Ann. Section 14-7-1630 (Supp. 1994). Specifically, Adams argues the Attorney General's petition to order impanelment of the Grand Jury lacked specificity.[1] Adams contends the impaneling judge committed error in ordering the impanelment based on this petition, and Adams's conviction must be vacated based on lack of subject matter jurisdiction.

Section 14-7-1630 states in pertinent part:

(A) The jurisdiction of a state grand jury impaneled under this article extends throughout the State. The subject matter jurisdiction of a state grand jury in all cases is limited to the following offenses:

(1) crimes involving narcotics, dangerous drugs, or controlled substances, or any crime arising out of or in connection with a crime involving narcotics, dangerous drugs, or controlled substances, . . . or any attempt, aiding, abetting, solicitation, or conspiracy to commit any of the aforementioned crimes if the crimes are of a multi-county nature or have transpired or are transpiring or have significance in more than once county of this State;

\*     \*     \*     \*     \*     \*

(B) Whenever the Attorney General and the chief of the South Carolina Law Enforcement Division consider it necessary and normal investigative or prosecutorial procedures are not adequate, the Attorney General may petition in writing to the Chief Administrative Judge of the judicial circuit in which he seeks to impanel a state grand jury for an order impaneling a state grand jury. This

---

[1] Adams bases this argument on comments made by Judge Don Rushing at a pretrial hearing on July 8, 1993. Judge Rushing had reviewed the state grand jury documents involved in this case pursuant to a defense motion to quash the indictments on abuse of process grounds. At this hearing, Judge Rushing stated that the relevant petitions to impanel the grand jury and open areas of inquiry are "so general that there's no evidentiary statements that are sufficient signed by the attorney general saying that they want to make an inquiry into these areas, but it's not specific at all. . . . It seems to me there ought to be some evidentiary [bases]. . . ." Judge Rushing continues that he would not have authorized the impanelment based on what he had in front of him.

judge is referred to in this article as the impaneling judge. The petition must allege the type of offenses to be inquired into and, in the case of those offenses contained in subsection (A)(1), must allege that these offenses may be of a multi-county nature or have transpired or are transpiring or have significance in more than one county of the State. The petition in all instances must specify that the public intrest is served by the impanelment.

At oral argument, counsel for Adams complained that the Appellate Defense Office had never seen the petition to impanel the grand jury or the order of impanelment. At this point, counsel only wanted to be assured that the documents existed. This court therefore requested the relevant documents from the state grand jury file. We have received and reviewed the petition to order impanelment dated April 22, 1992, and the resulting order of impanelment of that same date. The file also included an amended petition to order impanelment dated June 2, 1992, and the resulting order of impanelment of that same date.[2] Both petitions submitted by the Attorney General specifically track the language of § 14-7-1630. The petitions state the offenses to be inquired into by the grand jury include possession, distribution and trafficking in controlled substances, or conspiracy to commit these offenses. The state the offenses are multicounty in nature and the public interest would be served by impaneling the state grand jury. In their impaneling orders, the judges state they gave the petitions due consideration as required by Section 14-7-1630(C). Based on our review, the Attorney General fully complied with the requirements of Section 14-7-1630 and the grand jury was properly impaneled.

Adams also argues the third superseding indictment was not issued within the authorized time limits of the state Grand Jury Act. This grand jury was impaneled in April of 1992 and the third superseding indictment was issued in March of 1993.

---

[2] We are cognizant that these documents may not be the same ones which Judge Rushing had before him at the pretrial hearing because the dates Judge Rushing cited at that hearing are different from those on the documents before us. We have no alternative but to rely on the documents before us, however, because Adams has failed to carry his appellate burden of providing this court with an adequate record for review. *See General Acc. Ins. Co. v. Safeco Ins. Cos.,* — S.C. —, 443 S.E. (2d) 813 (Ct. App. 1994).

Section 14-7-1630(C) authorizes the state grand jury to serve for a term of twelve months. Thus this argument is without merit.

For the foregoing reasons, the conviction is

Affirmed.

HOWELL, C.J., and GOOLSBY, J., concur.