611 S.E.2d 510

**George Allen EVANS, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**No. 25963.**

Supreme Court of South Carolina.

Submitted April 21, 2004.

Decided April 4, 2005.

498

500

John Martin Foster, of Rock Hill, and the South Carolina Office of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Lakesha Jeffries, all of Columbia, for Respondent.

Justice BURNETT.

We granted George Allen Evans' (Petitioner's) petition for a writ of certiorari to decide whether a criminal defendant has the right to obtain documents pertaining to the impanelment of the state grand jury which indicted him. We conclude a defendant has a right to obtain such documents. We affirm in part and reverse in part.

## FACTS/PROCEDURAL POSTURE

Petitioner was tried in his absence in 1992, convicted of one count of trafficking in cocaine, and sentenced to twenty-five years in prison and fined $50,000. The Court of Appeals vacated the conviction due to a lack of subject matter jurisdiction. *State v. Evans,* 319 S.C. 320, 460 S.E.2d 578 (Ct.App. 1995). We reversed. *State v. Evans,* 322 S.C. 78, 470 S.E.2d 97 (1996).

Petitioner filed a post-conviction relief (PCR) action and sought the "files of the state grand jury," including, but not limited to, the State's petition and the court order impaneling the state grand jury which indicted him for trafficking in cocaine. The clerk of the state grand jury refused to release the documents pursuant to S.C.Code Ann. § 14–7–1770 (Supp. 2003).

However, by agreement of the parties and upon order of the PCR judge, the clerk provided the documents to the PCR judge for *in camera* review. The parties' attorneys have not reviewed the documents. However, the documents have been submitted to and reviewed by this Court.

The PCR judge denied Petitioner's application following an *in camera* review of the documents. The PCR judge found the petition and order were proper and the state grand jury that indicted Petitioner was properly impaneled. Therefore, the circuit court had subject matter jurisdiction in Petitioner's case.

The PCR judge further ruled Petitioner's trial counsel was not ineffective in failing to challenge the indictment for lack of subject matter jurisdiction and Petitioner failed to demonstrate prejudice. Further, the documents provided to Petitioner no information Petitioner had not already received from the State, *i.e.,* transcripts of witnesses' testimony and documentary evidence presented to the state grand jury.

## ISSUES

I. Must the State provide documents pertaining to the impanelment of a state grand jury upon a criminal defendant's timely request?

II. Does the record contain any evidence of probative value supporting the judge's ruling that Petitioner's counsel was not ineffective in failing to request and review the impanelment documents before Petitioner's trial?

## DISCUSSION

### I. *Availability of impanelment documents*

Petitioner asserts, first, he has a right to obtain and review the State's petition, supporting materials, and the judge's order impaneling the state grand jury which indicted him; second, trial counsel should have obtained the documents in order to determine whether the state grand jury which indicted Petitioner had been properly impaneled pursuant to S.C.Code Ann. § 14–7–1630 (Supp.2003); and, third, the circuit court would lack subject matter jurisdiction in his case if the state grand jury was not properly impaneled.

Petitioner argues the Due Process Clause,[1] the Sixth Amendment,[2] the state constitutional mandate that all courts shall be public,[3] and public policy as expressed in the state Freedom of Information Act[4] all support his argument. Petitioner asserts the Court of Appeals recognized the legitimacy of his position in *State v. Adams*, 319 S.C. 509, 462 S.E.2d 308 (Ct.App.1995) (concluding impanelment petition and order, reviewed only by Court of Appeals and not the parties, complied with State Grand Jury Act). Petitioner further argues Section 14–7–1770 is not a complete prohibition on the production of impanelment documents, but requires such documents remain secret only to the extent necessary to prevent disclosure of matters under consideration by the state grand jury.

Petitioner's arguments relating to the Sixth Amendment, public courts, and Freedom of Information Act are not preserved for review. *See Plyler v. State*, 309 S.C. 408, 424

---

1. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3.

2. U.S. Const. amend. VI.

3. S.C. Const. art. I, § 9.

4. S.C.Code Ann. §§ 30–4–15 to –165 (1991 & Supp.2003).

S.E.2d 477 (1992) (issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review); *Hyman v. State,* 278 S.C. 501, 299 S.E.2d 330 (1983) (same).

However, we conclude impanelment documents, including the State's petition, supporting materials, and the impaneling judge's order, may be released to a defendant prior to trial upon timely request or to an applicant in a PCR proceeding. The State may, of course, redact information not related to a particular defendant's case or information concerning other persons or matters under consideration by the state grand jury. Release of the documents may be appropriate because (A) Section 14–7–1770 is not a complete prohibition on the release of the information; (B) release of the documents usually is not prohibited by secrecy provisions or other concerns following the issuance of a true bill of indictment; and (C) a defendant has the right to review the documents to determine whether to timely challenge the legality of the state grand jury which indicted him.

## A. Impact of Section 14-7-1770

Section 14–7–1770 provides that "[r]ecords, orders, and subpoenas relating to state grand jury proceedings must be kept under seal *to the extent and for that time as is necessary to prevent disclosure of matters occurring before a state grand jury* " (emphasis added). The clerk of the state grand jury relied in part on this provision in refusing to produce the impanelment documents in the present case.

The terms of the statute do not impose a complete prohibition on the release of impanelment documents or other records, such that they must remain secret forever. The emphasized language indicates that, at some point in cases in which the grand jury returns a true bill of indictment, matters other than the grand jury's deliberations and voting may be disclosed to a defendant. Removing the veil of secrecy after a defendant has been indicted is consistent with the legislative intent expressed in Section 14–7–1770 and the Act as a whole. *E.g., Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998) ("[a]ll rules of statutory construction are subservient to the one that the legislative

intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute").

## B. Secrecy provisions and concerns

State grand jury proceedings are secret and those involved in such proceedings are prohibited from disclosing the nature or substance of the deliberations or vote of the state grand jury, or the testimony of a witness, unless otherwise ordered by a court. S.C.Code Ann. § 14–7–1720 (Supp. 2003).[5] The attorney general and other specified persons involved in grand jury proceedings may not disclose the testimony of a witness except when directed by the court in limited circumstances, including "complying with constitutional, statutory, or other legal requirements or to further justice." Section 14–7–1720(A)(5).

The stringent secrecy provisions contained in the Act mirror the view long held uniformly by courts nationwide that secrecy of grand jury proceedings is desirable and necessary. As the United States Supreme Court has explained in a case involving the federal grand jury system,

> We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are

---

5. The secrecy provisions do not prohibit a client from discussing with his attorney the client's testimony or other matters discussed in the client's presence before a state grand jury. Section 14–7–1720(C).

accused but exonerated by the grand jury will not be held up to public ridicule.

*United States v. Sells Engineering, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743, 752 (1983). *See also State v. Whitted,* 279 S.C. 260, 305 S.E.2d 245 (1983) ("[i]nvestigations and deliberations of a grand jury are conducted in secret and are, as a rule, legally sealed against divulgence"), *overruled on other grounds by State v. Collins,* 329 S.C. 23, 495 S.E.2d 202 (1998); *State v. Williams,* 263 S.C. 290, 295–296, 210 S.E.2d 298, 301 (1974) (rejecting challenges under Fifth, Sixth, and Fourteenth amendments to competency and adequacy of evidence presented to grand jury, in part due to the "long-established secrecy of grand jury actions and the nature and of its operations and functions"); *State v. Sanders,* 251 S.C. 431, 437, 163 S.E.2d 220, 224 (1968) (rejecting argument that defendant should have right to have judge poll the grand jury to ensure at least twelve of them voted to indict him because such a procedure would violate "the cloak of secrecy which has always been thrown around the deliberations of that body"); *Margolis v. Telech,* 239 S.C. 232, 241, 122 S.E.2d 417, 421 (1961) (emphasizing secret nature of grand jury matters in rejecting effort of defendant in civil case to present evidence of events and testimony that allegedly occurred in presence of grand jury, which chose not to indict relative who later sued defendant for malicious prosecution); *State v. Rector,* 158 S.C. 212, 225, 155 S.E. 385, 390 (1930) ("[a]s long as the grand jury has been known to our judicial system, and that body came with the organization of our first courts, their acts and proceedings have been regarded as almost sacredly secret"; inquiry or divulgence of grand jury proceedings uniformly is prohibited, absent legislation allowing the same).

The secrecy provisions applicable to a particular case are relaxed after an indictment has been issued by the state grand jury. All proceedings and testimony before the state grand jury are recorded by a court reporter, except the grand jury's deliberations and voting. A defendant is entitled to review and reproduce recorded materials of those proceedings, subject to the limitations contained in Sections 14–7–1720, 14–7–1770, and Rule 5, S.C.Crim.P. S.C.Code Ann. §§ 14–7–1700 (Supp.2003). A defendant's right to obtain such information in preparing his defense necessarily arises post-indictment. *Cf.*

*Rector,* 158 S.C. at 238, 155 S.E. at 394 (person does not have right to challenge qualification of grand juror until he is indicted).

Similarly, the State's petition, supporting materials, and the impaneling order may be made available to a defendant when a defendant's right to obtain recorded materials of the proceedings arises. Although maintaining secrecy is essential while a matter is under deliberation by the grand jury, such concerns diminish following issuance of a true bill of indictment. A defendant is allowed to obtain and use the impanelment documents in preparing a defense and ensuring protection of his due process rights.

*C. Use of impanelment documents to challenge legality of grand jury*

Initially, we note we address this third rationale for our decision today in light of our recent decision in *State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005) (Shearouse Adv. Sh. No. 11 at 37). In *Gentry,* we abandoned the view that, in criminal matters, the circuit court acquires subject matter jurisdiction to hear a particular case by way of a valid indictment by either a county or state grand jury. Under the former approach, except for certain minor offenses, the circuit court did not have subject matter jurisdiction in a criminal case unless there was an indictment which sufficiently stated an offense, the defendant had waived presentment of the indictment to the grand jury, or the charge was a lesser included offense of the crime charged in the indictment. Under that former approach, a defective or insufficient indictment could result in a lack of subject matter jurisdiction, which is a matter that may be raised at any time, including on direct appeal, in a PCR action, or *sua sponte* by the trial or appellate courts.

In *Gentry,* taking our cue from the United States Supreme Court and in keeping with our view of subject matter jurisdiction in civil cases, we explained that the subject matter jurisdiction of the circuit court and the sufficiency of an indictment are two distinct concepts. "[S]ubject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong."

*Gentry* at 42; *see also Pierce v. State,* 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000) (stating same principle); *Dove v. Gold Kist, Inc.,* 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994) (stating same principle); S.C. Const. art. V, § 11 ("The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law.").

In *Gentry,* then, we returned to our earlier view that an indictment is a "notice document," albeit one required by our state constitution and statutes. *See* S.C. Const. art. I, § 11 and art. V, § 22;[6] S.C.Code Ann. 17–19–10 (2003) ("[n]o person shall be held to answer in any court for an alleged crime or offense, unless upon indictment by a grand jury" except in specified instances). The primary purposes of an indictment are to put the defendant on notice of what he is called upon to answer, *i.e.,* to apprise him of the elements of the offense and to allow him to decide whether to plead guilty or stand trial, and to enable the circuit court to know what judgment to pronounce if the defendant is convicted. *Gentry* at 44–45; S.C.Code Ann. 17–19–20 (2003). This required notice is a component of the due process that is accorded every criminal defendant. *See* U.S. Const. amend. V; S.C. Const. art. I, § 3. Given that the sufficiency of an indictment will no longer be considered an issue of subject matter jurisdiction which may be raised at any time, we applied the general rule regarding preservation of error and held that a defendant must raise an issue regarding the sufficiency of the

---

6. Article I, § 11 provides, in pertinent part:

No person may be held to answer for any crime the jurisdiction over which is not within the magistrates court, unless on a presentment or indictment of a grand jury of the county where the crime has been committed.... The General Assembly may provide for the waiver of an indictment by the accused. Nothing contained in this Constitution is deemed to limit or prohibit the establishment by the General Assembly of a state grand jury with the authority to return indictments irrespective of the county where the crime has been committed and that other authority, including procedure, as the General Assembly may provide.
Article V, § 22 provides, in pertinent part:
The grand jury of each county, and the state grand jury, as the General Assembly may establish by general law, shall consist of eighteen members, twelve of whom must agree in a matter before it can be submitted to the Court.

indictment before the jury is sworn in order to preserve the error for direct appellate review. *Gentry* at 43 (citing S.C.Code Ann. 17–19–90 (2003)).

In the present case, we are concerned not with the sufficiency of a particular indictment, but with the legality and sufficiency of the process of the state grand jury which issued the indictment. However, we analyze this case in light of *Gentry* and with due regard for our renewed focus on the indictment as a notice document instead of a document which confers subject matter jurisdiction on the court. As we stated in *Gentry*,

[w]hen that indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which it has been presented, the source from which it proceeds, and have these matters promptly and properly determined; or waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge.

*Gentry* at 44 (quoting *State v. Faile*, 43 S.C. 52, 59–60, 20 S.E. 798, 801 (1895), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991)).

 A defendant has a constitutional right to demand that a grand jury which is properly established and constituted under the law consider the criminal allegations against him. *See* S.C. Const. art. I, § 11 and art. V, § 22. "[O]ne who demands and is refused the right to be tried for crime charged against him only upon an indictment presented by a legal grand jury, in instances where such indictment is required, may thereafter justly take the position that he has been deprived of life, liberty or property without due process of law" in violation of the state constitution. *Rector*, 158 S.C. at 230, 155 S.E. at 392 (internal quotes omitted).

 However, in keeping with our approach in *Gentry*, we conclude such a challenge does not implicate the subject matter jurisdiction of the circuit court. A defendant must challenge the legality and sufficiency of the process of the state grand jury before the jury renders a verdict in order to preserve the error for direct appellate review. *See* S.C.Code Ann. 14–7–1140 (Supp.2003) (in statute which has been found

to apply to petit and grand juries, "no irregularity . . . in the drawing, summoning, returning, or impaneling of jurors is sufficient to set aside verdict, unless the party making the objection was injured by the irregularity or unless the objection is made before the returning of the verdict").[7] When a defendant timely moves to quash an indictment on grounds such as those further explained below, the circuit court must determine whether the defendants constitutional right to have the criminal allegations against him weighed by a properly constituted grand jury has been violated.

In the first category of cases, an indictment or "notice document" issued by a grand jury which is established or constituted illegally is deemed a nullity. An indictment which is a nullity would be insufficient, as a matter of law, to give the required notice to a defendant. In such cases, a defendants challenge "does not assert a disqualification which affects only a member of a body otherwise lawful, nor a mere irregularity in doing [that] which the law requires, which assumes a power to act; but it goes to the existence of the grand jury as a body, that it is void as such, and that its indictment is therefore a nullity." *State v. Edwards,* 68 S.C. 318, 322, 47 S.E. 395, 396 (1904) (where legislative act under which grand jury was created and impaneled was later declared unconstitutional, grand jury was an illegal body and thus murder indictment issued was a nullity and incurable). *See also State v. Sanders,* 251 S.C. 431, 438, 163 S.E.2d 220, 224 (1968) (indicating that exclusion of women from grand jury service could cause

---

7. To the extent the following cases stand for the proposition that an indictment which is deemed to be a nullity because it was issued by an illegal grand jury implicates an issue of subject matter jurisdiction that may be raised at any time, we overrule them: *Lollis v. Manning,* 242 S.C. 316, 130 S.E.2d 847 (1963); *State v. Hann,* 196 S.C. 211, 12 S.E.2d 720 (1940); *State v. Rector,* 158 S.C. 212, 155 S.E. 385 (1930); *State v. Edwards,* 68 S.C. 318, 47 S.E. 395 (1904); and *State v. Rafe,* 56 S.C. 379, 34 S.E. 660 (1900).

Although this case involves the state grand jury, we similarly conclude that challenges to the legality and sufficiency of the process of a county grand jury also must be made before the jury renders a verdict in order to preserve the error for direct appellate review.

We recognize that in *Gentry,* relying on Section 17–19–90, we held the sufficiency of an indictment must be challenged before the jury is sworn. In contrast, a challenge to the legality or sufficiency of the process of the grand jury must be made before the jury renders its verdict pursuant to Section 14–7–1140.

indictment to be a nullity based on challenge that goes to existence of grand jury as a whole, but in this case the male-only grand jury which indicted defendant was proper under then-existing law, as women were not allowed to serve on juries until state constitutional amendment in 1967 and grand jury system could not undergo fundamental change overnight); *State v. Rafe,* 56 S.C. 379, 34 S.E. 660 (1900) (stating that if record revealed every grand juror was disqualified or if only twelve grand jurors participated and one of them was disqualified, then the grand jury would be illegal and any indictment issued would be a nullity).[8]

Similarly, an indictment issued by a grand jury in which the jurors were selected in an illegal or discriminatory manner likely would be deemed a nullity and, as a matter of law, would be insufficient to give the required notice to a defendant. *See e.g. Campbell v. Louisiana,* 523 U.S. 392, 398, 118 S.Ct. 1419, 1423, 140 L.Ed.2d 551, 559 (1998) (finding white defendant had standing to raise equal protection challenge to discrimination against black persons in selection of grand jury; "discrimination on the basis of race in the selection of members of a grand jury ... strikes at the fundamental values of our judicial system because the grand jury is a central component of the criminal justice process"); *Vasquez v. Hillery,* 474 U.S. 254, 263–264, 106 S.Ct. 617, 623, 88 L.Ed.2d 598, 609 (1986) (holding racial discrimination in selection of grand jury is fundamental flaw undermining structural integrity of criminal tribunal itself and, therefore, is not subject to harmless error review); *Sheppard v. State,* 357 S.C. 646, 656–57, 594 S.E.2d 462, 468 (2004) (affirming denial of defendants timely motion to quash indictment based on claim that racial discrimination

---

8. We note this Court later rejected language in *Rafe* and other cases that appeared to require a defendant to show prejudice when challenging the formation or legality of a grand jury. This Court has recognized the important role of the grand jury in the criminal justice system, as well as the impossibility of demonstrating prejudice due to the secret nature of the grand jury's deliberations and voting. *Rector,* 158 S.C. at 222–243, 155 S.E. at 389–396 (to require a defendant to show prejudice by proving an ineligible grand juror participated in the consideration of his case "is to demand an impossibility. It is to tell him that he must establish something, even if it be true, that he is powerless to have disclosed.").

infected grand jury selection process because statistical data did not support the claim).

In a second category of cases, a defendant may assert a lesser irregularity in the selection or makeup of a grand jury which indicted him, such as proving the disqualification of an individual grand juror. *See Lollis v. Manning,* 242 S.C. 316, 130 S.E.2d 847 (1963) (explaining the difference between a challenge to existence of grand jury as a legally constituted body and a challenge raising an irregularity relating to qualification of a grand juror); *State v. Jackson,* 240 S.C. 238, 125 S.E.2d 474 (1962) (where defendant timely moved to quash indictment before jury verdict, Court affirmed dismissal of a murder indictment issued by grand jury whose members had been drawn from a pool not constituted as then required by statute); *State v. Hann,* 196 S.C. 211, 218–230, 12 S.E.2d 720, 723–728 (1940) (reaffirming principles set forth in *State v. Bibbs,* 192 S.C. 231, 6 S.E.2d 276 (1939), and *State v. Rector,* 158 S.C. 212, 220–243, 155 S.E. 385, 388–396 (1930), but finding defendant was fully aware of potential challenge to qualification of grand jurors and expressly waived his right to require State to re-present indictment to grand jury containing only members whose voter registration certificates had been properly signed and delivered by registration board).[9]

In the first and second categories of cases, the circuit court must strike down the indictment when a defendant, in a timely motion to quash an indictment made before the jury renders its verdict, demonstrates the grand jury which indicted him is a nullity or proves the disqualification of an individual juror. Otherwise, the defendants constitutional right to demand that his case be considered by a grand jury which is properly established and constituted under the law would have no force or effect.

In a third category of cases, a defendant may assert a truly minor irregularity in the functioning or processes of the

---

9. Various statutes govern the qualifications and selection of grand jurors, including S.C.Code § 14–7–130 (Supp.2003) (setting forth basic qualifications to be included in list of persons eligible for jury service); S.C.Code Ann. § 14–7–810 to –870 (Supp.2003); (disqualifications, exemptions, and excusals from jury service); and S.C.Code Ann. § 14–7–1660 (Supp.2003) (selection of state grand jurors).

grand jury. Such a challenge does not implicate the legality of the grand jury or constitute a lesser irregularity which rises to the level of a constitutional violation. *See State v. Orrs,* 189 S.C. 1, 199 S.E. 865 (1938) (rejecting challenge to grand jury based on fact that some paper ballots had blue lines and others had red lines as result of cutting same sort of white paper, where statute required ballots to be on same type of paper); *State v. Jeffcoat,* 26 S.C. 114, 1 S.E. 440 (1887) (statute which changed the time of holding court did not make illegal a grand jury which had been drawn under previous statute). The circuit court ordinarily should not quash an indictment when a defendant, in a timely motion made before the jury renders its verdict, asserts a truly minor irregularity in the grand jury process.

In sum, a defendant is entitled to review impanelment documents in order to determine, by a timely motion to quash an indictment made before the jury renders its verdict, whether the state grand jury which indicted him was legally established or suffered from any lesser irregularity which implicates the defendant's constitutional right to have his case considered by a grand jury which is properly constituted under the law.

Accordingly, impanelment documents ordinarily may be released to a defendant after the state grand jury has issued a true bill of indictment against that defendant. A defendant's request should be made prior to trial pursuant to Rule 5, SCCrimP. If the State should object to releasing all or part of the impanelment documents, a defendant may move to compel discovery of the documents. *See* Rule 5(d), SCCrimP. The burden of proof is on the State to demonstrate why the documents should not be released because only the State possesses the necessary information to analyze the issue and explain to the court why releasing the documents should be prohibited or delayed. *See Rector,* 158 S.C. at 228, 155 S.E. at 391 (explaining that requiring a defendant to show he was prejudiced by the presence of a disqualified grand juror, where defendant had no right to inquire into vote of grand jury, "is to demand an impossibility"). The circuit court may, if necessary, conduct an *in camera* review of the impan-

eling documents to determine whether the State has met its burden in either prohibiting or delaying their release.

The regularity of grand jury proceedings is presumed absent clear evidence to the contrary. *State v. Griffin,* 277 S.C. 193, 285 S.E.2d 631 (1981); *State v. Thompson,* 305 S.C. 496, 409 S.E.2d 420 (Ct.App.1991). Thus, after a defendant obtains the requested information, the burden is on the defendant to prove facts upon which a challenge to the legality of the grand jury or its proceedings is predicated. *E.g. State v. Jackson,* 240 S.C. 238, 243, 125 S.E.2d 474, 477 (1962). Further, the appellate court will reverse the circuit court's decision on the issue only if that court has abused its discretion.

## *II. Ineffective assistance of counsel*

There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). In order to prove that counsel was ineffective, the applicant must show that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland, supra; Rhodes v. State,* 349 S.C. 25, 561 S.E.2d 606 (2002). Thus, an applicant must show both error and prejudice to obtain relief in a PCR proceeding. *Scott v. State,* 334 S.C. 248, 513 S.E.2d 100 (1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Johnson v. State,* 325. S.C. 182, 325 S.C. 182, 480 S.E.2d 733 (1997).

The burden is on the applicant in a post-conviction proceeding to prove the allegations in his application. *Butler v. State,* 286 S.C. 441, 334 S.E.2d 813 (1985). An appellate court may affirm the PCR court's decision when its findings are supported by any evidence of probative value in the record. *Cherry, supra.* However, an appellate court will not affirm the decision when it is not supported by any probative evidence. *Holland v. State,* 322 S.C. 111, 470 S.E.2d 378 (1996).

■ As previously explained, the PCR judge denied relief to Petitioner after conducting an *in camera* review of the State's petition, supporting materials, and the impaneling judge's order. After our own review of those same impanelment documents, we conclude the petitions and impaneling orders dated November 1991 and June 1992 comply with the statutory mandates. *See Adams, supra.*

The supporting materials submitted with the State's petition contain a synopsis of the investigation. The materials include a review of information gathered, the scope and geographic extent of the alleged crimes, law enforcement agencies involved, and a list of potential suspects. The PCR judge correctly reasoned that most of this information was contained in the documents and transcripts of proceedings Petitioner obtained as a result of his discovery requests during the PCR proceeding.

The only information Petitioner may not have obtained was the list of potential suspects, to which he is not entitled. The State is free to redact information unrelated to a defendant's case or information about other persons or matters under consideration by the state grand jury—including a list of potential suspects—prior to releasing impanelment documents and supporting materials to a defendant.

■ We conclude Petitioner's trial counsel was not ineffective in failing to request and review the impaneling documents and supporting materials. *See Gilmore v. State,* 314 S.C. 453, 445 S.E.2d 454 (1994) (attorney is not required to be clairvoyant or anticipate changes in the law which were not in existence at time of trial), *overruled on other grounds by Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614 (1999). Furthermore, Petitioner has not demonstrated prejudice under the facts of this case. The PCR judge's denial of relief to Petitioner is supported by evidence of probative value in the record; therefore, we affirm his decision.

## CONCLUSION

We reverse the PCR judge's decision prohibiting the release of the impanelment documents to Petitioner. We affirm the denial of Petitioner's PCR application because he failed to

demonstrate error or prejudice resulting from his trial attorney's actions.

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., MOORE and WALLER, JJ., concur. PLEICONES, J., not participating.